# EXHIBIT D

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| City of Port Isabel, et al.<br><br>Petitioners<br><br>v.<br><br>Federal Energy Regulatory Commission,<br><br>Respondent. | No. 23-1174 |

# DECLARATION OF RIO GRANDE LNG LLC
# CHIEF FINANCIAL OFFICER BRENT WAHL

I, Brent Wahl, of full age, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Chief Financial Officer for Rio Grande LNG, LLC ("Rio Grande").

2. I have personal knowledge of the facts in this Declaration.

3. I make this declaration in support of the Joint Opposition to the Motion for Stay filed in the United States Court of Appeals in the District of Columbia Circuit, which seeks among other things to halt construction activities in support of the Rio Grande Project.

4. A stay of the project authorization would have extremely serious consequences for the project. FERC authorization is key to the $18.4 billion in

1

project financing Rio Grande has obtained for the project. To finance the construction of Phase 1, Rio Grande (i) executed and closed a joint venture agreement which included approximately $5.9 billion of financial commitments from GIP V Velocity Acquisition Partners, L.P., a limited partnership managed by Global Infrastructure Partners ("GIP"); Devonshire Investment Pte. Ltd., a Singapore exempt private company ("Devonshire"); Global LNG North America Corp., a subsidiary of TotalEnergies SE ("TotalEnergies"); and MIC TI Holding Company 2 RSC Limited, an Abu Dhabi Global Market Restricted Scope Company ("MIC"); (ii) closed senior secured non-recourse bank credit facilities of $11.6 billion, consisting of $11.1 billion in construction term loans and a $500 million working capital facility; and (iii) closed a $700 million senior secured non-recourse private placement notes offering[1] (collectively, the "Closing Date Project Financing"). Subsequently, Rio Grande has executed three transactions to refinance approximately $800 million of the Closing Date Project Financing (such subsequent transactions, together with the Closing Date Financing, the "Project Financing Arrangements").

---

[1] *See* Press Release, NextDecade Co., *NextDecade Announces Positive Final Investment Decision on Rio Grande LNG Phase 1* (July 12, 2023), https://investors.next-decade.com/news-releases/news-release-details/nextdecade-announces-positive-final-investment-decision-rio. All documents referred to in the press release are available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1612720/000143774923023665/next20230630_10q.htm.

2

5. The Project Financing Arrangements obligate Rio Grande to construct Phase 1 of the Rio Grande LNG Terminal within the parameters of all required governmental approvals, including the Order on Remand. Granting a stay could trigger restrictions under the Project Financing Arrangements that would cause irreparable harm to Rio Grande preventing it from having access to cash for the construction of Phase 1 of the Rio Grande LNG Terminal.

6. Rio Grande has entered into engineering, procurement and construction agreements executed with Bechtel Energy for construction of the first three trains and related common facilities (Phase 1) of the Rio Grande LNG Terminal (the "EPC Agreements"),[2] and other contracts for the construction of additional ancillary facilities. Granting a stay would result in substantial disruption of the project and significant additional costs for Rio Grande as a result of a suspension of the agreements and additional delays. Contractors already on the site would have to be demobilized or remobilized and key dates under the EPC Agreements would have to be extended. This risks serious negative impacts on Rio Grande's ability to bring its facility online as scheduled in addition to the significantly increased costs.

7. The inability to bring the facility online as scheduled would also affect Rio Grande's obligations under the long-term LNG sales and purchase agreements

---

[2] *See* Press Release, NextDecade Co., *NextDecade Announces Positive Final Investment Decision on Rio Grande LNG Phase 1* (July 12, 2023), https://investors.next-decade.com/news-releases/news-release-details/nextdecade-announces-positive-final-investment-decision-rio.

3

to deliver vitally needed supplies of U.S. LNG to its foreign offtakers, including TotalEnergies, Shell, ENGIE, Galp, Itochu, ExxonMobil, ENN, China Gas and Guangdong Energy. All of these companies have entered into binding agreements reflecting their need for this energy, and Rio Grande has an obligation to provide it. An open ended, lengthy stay of construction could jeopardize the contracts themselves. European offtakers in particular are placed in a difficult position when they are unable to receive cargoes of U.S. LNG that would enable them to reduce and eliminate dependence on source of natural gas from Russia and other volatile sources.

8. A stay would also have a substantial negative impact on the community of the Rio Grande Valley, a community with some of the highest unemployment rates in the United States. About 750 people are currently working on the site, 73% of whom are hired locally. These local jobs provide economic benefits to an economically deprived area of the country. Numerous ancillary services are also provided offsite in Cameron County. If a stay were granted, most of these jobs would no longer be available, resulting in the loss of hundreds of local jobs. Many of those workers have ordered their lives around the long-term opportunities presented by the project and would have those plans disrupted as well.

9. Rio Grande does not have provisions in LNG sales and purchase agreements to recover the significant additional costs that would be imposed by a

stay. Depending on the duration of the stay the offtakers could have the right to terminate such LNG sales and purchase agreements due to delays in the commencement of commercial operations.

10. A stay would also subject Rio Grande to significant reputational risk and threaten its ability to enter new business arrangements in the future. To credibly offer long term natural gas supply contracts, a company needs to be seen as a stable and dependable supplier. An indefinite delay in our ability to come online would directly undercut the perception that our company is a dependable partner.

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct.

*/s/ Brent Wahl*
Brent Wahl