ORAL ARGUMENT NOT YET SCHEDULED

No. 23-1174 (L), 23-1221

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

CITY OF PORT ISABEL, *et al.*,

*Petitioners*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent.*

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

## PETITIONERS' JOINT RULE 30(c)
## PROOF REPLY BRIEF

Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org

Tom Gosselin
Sierra Club
P.O. Box 4998
Austin, TX 78723
424-346-3276
tom.gosselin@sierraclub.org

Lisa M. Diaz
Sierra Club
910 Julia Street,
New Orleans, LA 70113
305-336-2258
lisa.diaz@sierraclub.org

*Attorneys for Carrizo Comecrudo Tribe of Texas, Sierra Club, and Vecinos para el Bienestar de la Comunidad Costera*

**Additional counsel listed on inside cover.**

Gilberto Hinojosa
531 E. St. Francis St.
Brownsville, Texas 78520
(956) 544-4218
ghinojosa@ghinojosalaw.net

*Attorney for City of Port Isabel*

Dated March 4, 2024

# TABLE OF CONTENTS

Table of Contents ......................................................................... i

Table of Authorities...................................................................... iii

Glossary .....................................................................................vii

Summary ..................................................................................... 1

Argument...................................................................................... 3

    I.   NEPA Process ....................................................................... 3

        A.   Additional NEPA Process Was Required ............................... 4

        B.   Failure to Use NEPA Process Was Not Harmless ................ 8

    II.  Air Quality and Environmental Justice ...................................... 11

        A.   FERC's Air Quality Estimates Ignored Important Data .... 11

            1.   Particulate Matter ..................................................... 11

            2.   Ozone........................................................................ 13

        B.   FERC Failed to Adequately Analyze Environmental Justice Impacts........................................................................ 15

            1.   FERC Has Not Provided A Coherent Explanation of Whether Air Pollution Will Disproportionately Adversely Affect Environmental Justice Communities ................................................................ 16

            2.   FERC's Scope of Environmental Justice Analysis Does Not Reflect Actual Impacts............................... 18

    III.  Greenhouse Gas Emissions ...................................................... 20

        A.   FERC's Orders Did Not Dispute That FERC Was Required to Determine the Significance of Greenhouse Gas Emissions, If Possible ..................................................... 22

        B.   FERC Could Have Used Its *Northern Natural Gas* Approach ......................................................................... 24

C.  Social Cost of Carbon Is Generally Accepted, Including for Project-Level NEPA Review ...................................................25

D.  FERC Does Not Need Other Agencies to Define When Monetized Impacts Become Significant ..............................28

E.  FERC's Limited Discussion of Greenhouse Gas Impacts Fell Short of FERC's NEPA and Natural Gas Act Obligations . 30

IV.  Carbon Capture and Sequestration.............................................32

V.  Remedy.....................................................................................34

Conclusion ..........................................................................................36

Certificate of Compliance ...................................................................38

Certificate of Service ...........................................................................39

# TABLE OF AUTHORITIES

## Cases

*Am. Pub. Gas Ass'n v. U.S. Dep't of Energy,*
   72 F.4th 1324 (D.C. Cir. 2023) ...................................................... 34, 35

*Bd. of Cnty. Commissioners of Weld Cnty., Colorado v. EPA,*
   72 F.4th 284 (D.C. Cir. 2023) .............................................................. 30

*Butte Cnty., Cal. v. Hogen,*
   613 F.3d 190 (D.C. Cir. 2010) .............................................................. 13

*Canadian Ass'n of Petrol. Producers v. FERC,*
   254 F.3d 289 (D.C. Cir. 2001) .............................................................. 15

*Catawba Cnty., N.C. v. EPA,*
   571 F.3d 20 (D.C. Cir. 2009) ................................................................ 12

*City of Olmsted Falls, OH v. FAA,*
   292 F.3d 261 (D.C. Cir. 2002) ................................................................ 7

*Coburn v. McHugh,*
   679 F.3d 924 (D.C. Cir. 2012) .............................................................. 17

*Columbia Gas Transmission Corp. v. FERC,*
   477 F.3d 739 (D.C. Cir. 2007) .............................................................. 22

*Constellation Energy Commodities Group v. FERC,*
   457 F.3d 14 (D.C. Cir. 2006) .................................................................. 5

*Ctr. for Biological Diversity v. FERC,*
   67 F.4th 1176 (D.C. Cir. 2023) ............................................................ 23

*Del. Riverkeeper Network v. FERC,*
   45 F.4th 104 (D.C. Cir. 2022) .............................................................. 23

*Dine Citizens Against Ruining Our Env't v. Haaland,*
   59 F.4th 1016 (10th Cir. 2023) ............................................................ 31

*Drake v. FAA,*
    291 F.3d 59 (D.C. Cir. 2002) ........................................................ 15, 32

*Eagle County, Colorado v. Surface Transp. Bd.,*
    82 F.4th 1152 (D.C. Cir. 2023) ............................................................ 34

*Food & Water Watch v. FERC,*
    28 F.4th 277 (D.C. Cir. 2022) ............................................................ 23

*Friends of Cap. Crescent Trail v. Fed. Transit Admin.,*
    877 F.3d 1051 (D.C. Cir. 2017) ........................................................ 7, 33

*Friends of the River v. FERC,*
    720 F.2d 93 (D.C. Cir. 1983) ............................................................ 5, 9

*Gulf S. Pipeline Co., LP v. FERC,*
    955 F.3d 1001 (D.C. Cir. 2020) ............................................................ 25

*Idaho Sporting Congress v. Alexander,*
    222 F.3d 562 (9th Cir. 2000) ................................................................ 5

*Minisink Residents for Env't Preservation & Safety v. FERC,*
    762 F.3d 97 (D.C. Cir. 2014) ................................................................ 8

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ................................................................................ 32

*Myersville Citizens for a Rural Cmty., v. FERC,*
    783 F.3d 1301 (D.C. Cir. 2015) .............................................................. 8

*Nat. Res. Def. Council v. Nuclear Regulatory Commission,*
    879 F.3d 1202 (D.C. Cir. 2018) ........................................................ 1, 9

*Nat'l Comm. for the New River v. FERC,*
    373 F.3d 1323 (D.C. Cir. 2004) .............................................................. 7

*Oglala Sioux Tribe v. Nuclear Regulatory Comm'n,*
    45 F.4th 291 (D.C. Cir. 2022) ("*Oglala Sioux II*") .................................. 9

*Process Gas Consumers Grp. v. FERC*,
    930 F.2d 926 (1991) ............................................................. 8

*Robertson v. Methow Valley Citizens Council*,
    490 U.S. 332 (1989) ............................................................ 31

*SEC v. Chenery Corp.*,
    318 U.S. 80 (1943) ............................................................. 12

*Sierra Club v. EPA*,
    356 F.3d 296 (D.C. Cir. 2004) ............................................. 15

*Sierra Club v. FERC*,
    867 F.3d 1357 (D.C. Cir. 2017) ("*Sabal Trail*") ............... 5, 31

*Stand Up for California! v. Dep't of the Interior*,
    994 F.3d 616 (D.C. Cir. 2021) ........................................ 1, 6, 7

*Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*,
    985 F.3d 1032 (D.C. Cir. 2021) ................................... 8, 9, 35

*Temple Univ. Hosp., Inc. v. NLRB*,
    929 F.3d 729 (D.C. Cir. 2019) ............................................. 22

*Vecinos para el Bienestar de la Comunidad Costera v. FERC*,
    6 F.4th 1321 (D.C. Cir. 2021) ("*Vecinos*") ............... 1, 4, 6, 20, 27, 32, 33

*Village of Bensenville v. FAA*,
    457 F.3d 52 (D.C. Cir. 2006) ........................................ 12, 13

**Statutes**

15 U.S.C. § 717b ..................................................................... 32

42 U.S.C. § 4332 ....................................................................... 5

## Regulations

18 C.F.R. § 380.1 ......................................................................... 3

18 C.F.R. § 380.7 ................................................................... 23, 24

40 C.F.R. § 1501.9 .................................................................... 34

40 C.F.R. § 1502.16 .................................................................. 23

40 C.F.R. § 1502.21 ........................................... 21, 25, 26, 29, 32

40 C.F.R. § 1502.9 ................................................................. 5, 6

40 C.F.R. § 1508.1 ............................................................. 14, 30

40 C.F.R. Pt. 50, App. N ........................................................ 12

## FERC Decisions

*Florida Southeast Connection,*
    162 FERC ¶ 61,233 (Mar. 14, 2018) .................................... 35

*Interim GHG Policy,*
    178 FERC ¶ 61,108 (Feb. 18, 2022) ......................... 24, 25, 31

*Northern Natural Gas,*
    174 FERC ¶ 61,189 (Mar. 22, 2021) ............................. 21, 24

*Texas Eastern Transmission,*
    139 FERC ¶ 61,138 (May 21, 2012) .................................... 25

## Other Agency Decisions

Council on Environmental Quality,
    *Interim NEPA Guidance on Consideration of Greenhouse Gas
    Emissions,* 88 Fed. Reg. 1196 (Jan. 9, 2023) ................... 27, 31

# GLOSSARY

| | |
|---|---|
| Authorization Order | *Rio Grande LNG*, 169 FERC ¶ 61,131 (Nov. 22, 2019), R.1314 [JA_____] |
| EIS | Environmental Impact Statement |
| EPA | Environmental Protection Agency |
| FERC | Federal Energy Regulatory Commission |
| JA___ | Joint Appendix page(s) |
| LNG | Liquefied Natural Gas |
| NEPA | National Environmental Policy Act |
| NAAQS | National Ambient Air Quality Standards |
| $PM_{2.5}$ | Fine Particulate Matter |
| Rehearing Order | *Order Addressing Arguments etc. re: Rio Grande LNG, LLC, et al.*,185 FERC ¶ 61,080 (Oct. 27, 2023), R.3080 [JA___] |
| 2020 Rehearing Order | *Order on Rehearing and Stay*, 170 FERC ¶ 61,046 (Jan. 23, 2020), R.1349 [JA___] |
| Rehearing Request | *Sierra Club et al. Request for Rehearing of the April 21, 2023 Order under CP16-454 et al.* (May 22, 2023), R.3021 [JA__] |
| Remand Order | *Order on Remand and Amending Section 7 Certificate re Rio Grande LNG,* 183 FERC ¶ 61,046 (April 21, 2023), R.3011 [JA__] |

# SUMMARY

FERC's actions on remand from *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321 (D.C. Cir. 2021), were both procedurally and substantively flawed.

The Remand Order's analysis of air pollution and environmental justice rests on an entirely new analysis, based on data not presented in the EIS. FERC could not do so without a supplemental EIS. FERC's new analysis presents a "seriously different picture," *Stand Up for California! v. Dep't of the Interior*, 994 F.3d 616, 629 (D.C. Cir. 2021), in that FERC reversed its prior conclusion that the projects would not have disproportionate adverse effects on environmental justice communities, and FERC identified hundreds of additional census blocks that FERC contends will be so affected. Moreover, cases applying the "seriously different picture" language involved agencies that were still relying on an EIS; none considered an agency that had itself concluded that additional analysis was necessary. FERC's failure to follow NEPA procedures was not harmless, where this Court cannot be confident that "there is nothing to be gained" by a remand. *Nat. Res. Def. Council v. Nuclear Regulatory Commission*, 879 F.3d 1202, 1210 (D.C. Cir. 2018).

The content of FERC's analysis was also flawed. On air pollution, FERC offers no coherent justification for rejecting data from the Isla Blanca air monitor, and respondents do not dispute that ship emissions were omitted from the ozone analysis. On environmental justice, FERC's brief argues that air pollution "would not ... have a disproportionately adverse impact" on environmental justice communities, FERC Br. 40, but also that the impact of air pollution on these communities "would be disproportionately high and adverse," FERC Br. 35, without reconciling the two. FERC does not dispute that the scope of environmental justice analysis includes communities that FERC has not concluded would be affected in any meaningful way.

On climate, FERC's suggestion that it need not evaluate significance is *post-hoc* and incorrect. FERC does not explain why the 7.2 million tons per year of emissions here are not facially significant. FERC's argument that the social cost of carbon is not generally accepted by the scientific community for project level review is empirically incorrect: many agencies accept the tool for this purpose, and FERC does not identify any that do not. FERC routinely determines whether impacts are significant without a general or uniform threshold. The limited

2

discussion of climate that FERC did provide fell short of the required discussion of significance.

On carbon capture and sequestration, *Vecinos* held that FERC failed to demonstrate that the projects greenhouse emissions did not render them contrary to the public interest. This is not a case where FERC has already determined that further mitigation is unnecessary. Carbon capture is also a connected action, demonstrated by Rio Grande's explicit request that FERC consider carbon capture in its reevaluation of the terminal.

Because FERC had an opportunity to cure the deficiencies identified in *Vecinos* but failed to do so, vacatur is the appropriate remedy.

## ARGUMENT

## I.  NEPA PROCESS

NEPA is not merely a vague instruction to provide public participation in some form or another. FERC has explicitly adopted the Council on Environmental Quality's regulations, *see* 18 C.F.R. § 380.1, which provide a considered, specific, structured process for ensuring meaningful NEPA review. Opening Br. 30-34.

FERC did not follow NEPA procedures after the *Vecinos* remand. *Id*. The questions here are whether FERC was required to follow that process, and if so, whether FERC's failure to do so is harmless. FERC's arguments on both points fail.

## A.  Additional NEPA Process Was Required

FERC was required to engage in additional NEPA process—either a new or supplemental EIS—both because the EIS here was flawed when issued (in 2019), and because of new information post-dating the EIS.

**First,** *Vecinos*, and FERC's response thereto, leave no doubt that the EIS was flawed when issued. *Vecinos* remanded to FERC with instructions to either explain why the EIS's analysis was in fact adequate "or else" to provide additional analysis. *Vecinos*, 6 F.4th at 1331. FERC chose the latter approach for environmental justice, providing an entirely new, and broader, analysis. FERC thereby conceded that the EIS's environmental justice analysis was inadequate, and FERC does not argue otherwise here.

4

NEPA requires that this deficiency be cured with additional NEPA process.[1] NEPA prohibits federal action significantly affecting the environment unless that action's effects have been analyzed in an EIS. 42 U.S.C. § 4332(c). Agency action is arbitrary if the EIS that "undergirds" it is "deficient." *Sierra Club v. FERC*, 867 F.3d 1357, 1368 (D.C. Cir. 2017) ("*Sabal Trail*"). FERC does not—and could not—contend that the EIS itself provides sufficient analysis. But providing analysis in a non-NEPA, post-EIS document "[does] not measure up to NEPA's command." *Friends of the River v. FERC*, 720 F.2d 93, 105-06 (D.C. Cir. 1983);[2] *accord Idaho Sporting Congress v. Alexander*, 222 F.3d 562, 564 (9th Cir. 2000).

**Second**, NEPA required FERC to prepare a supplemental EIS to address "significant new circumstances or information." 40 C.F.R. § 1502.9(d)(1)(ii). FERC argues that supplementation is only required when "new information provides a *seriously* different picture of the

_____

[1] *Contra* FERC Br. 61, this was the first argument on the first page of Vecinos' rehearing request. Rehearing Request, 1 [JA___]. This is not a case where petitioners entirely failed to make the argument at issue, as in *Constellation Energy Commodities Group v. FERC*, 457 F.3d 14, 21 (D.C. Cir. 2006).

[2] As explained *infra*, here, unlike in *Friends of the River*, FERC's NEPA violation was not harmless.

environmental landscape." *Stand Up for California!*, 994 F.3d at 629. That standard is met here. Most importantly, FERC reversed its conclusion regarding environmental justice. FERC previously concluded the projects would "not have disproportionate adverse effects on minority and low-income residents in the area." *Vecinos*, 6 F.4th at 1330; 2020 Rehearing Order PP69-77 [JA___-___]. FERC now states the projects *will* have disproportionately adverse effects on environmental justice communities, apparently including hundreds of census blocks within 50 kilometers of the terminal. FERC Br. 36 (citing Remand Order P206 [JA___]). This reversal is plainly "significant" within the meaning of section 1502.9(d)(1)(ii) and 'seriously different' for purposes of FERC's analysis; *inter alia*, *Vecinos* held that a finding of disproportionate adverse impact could undermine FERC's public interest conclusion. 6 F.4th at 1331.

FERC changed other conclusions as well. FERC reversed its prediction that cumulative ozone impacts could exceed the National Ambient Air Quality Standards ("NAAQS"). *Compare* 2020 Rehearing Order P55 [JA___-___] *with* FERC Br. 43-44. Similarly, while FERC previously determined that impacts on "surface water quality," "the

6

federally-listed ocelot … jaguarundi [and] … aplomado falcon," and "nearby noise-sensitive areas during nighttime construction" would be cumulatively significant, Authorization Order P22 [JA___], FERC now claims these will be "less than significant." FERC Br. 60 (quoting Remand Order P206 [JA___]).

Even where conclusions drawn from FERC's new analysis were not "seriously different" from those in the EIS, supplementation is required because of the new analysis, data, and methodology FERC used on remand. NEPA requires that the public have the opportunity to comment on the agency's analytic process, not merely the result thereof. In this Court's "seriously different picture" cases, the agency was still relying on the analysis presented in the agency's EIS. *Stand Up for California!*, 994 F.3d at 629; *Friends of Cap. Crescent Trail v. Fed. Transit Admin.*, 877 F.3d 1051, 1058-62 (D.C. Cir. 2017), *Nat'l Comm. for the New River v. FERC*, 373 F.3d 1323, 1327-31 (D.C. Cir. 2004), *City of Olmsted Falls, OH v. FAA*, 292 F.3d 261, 274 (D.C. Cir. 2002). These cases therefore do not hold that an agency can, without supplemental NEPA procedures, entirely replace the structure supporting a conclusion, so long as the conclusion itself is relatively unchanged.

7

In addition, supplementation was required to address Rio Grande's carbon capture proposal, *infra* Part IV.


## B.  Failure to Use NEPA Process Was Not Harmless

FERC's failure to prepare a supplemental EIS using NEPA's procedures cannot be excused as harmless.

Many of the cases respondents cite did not involve violations of explicit procedural requirements, and thus have no bearing on whether such a violation can be harmless. Two concerned process claims rooted in due process, not NEPA, which this Court rejected on the merits. *Myersville Citizens for a Rural Cmty., v. FERC*, 783 F.3d 1301, 1327 (D.C. Cir. 2015); *Minisink Residents for Env't Preservation & Safety v. FERC*, 762 F.3d 97, 115 (D.C. Cir. 2014). Another held that FERC complied with regulations governing discovery in rate proceedings, and that, *given such compliance*, FERC had "broad discretion to decide what procedures to use." *Process Gas Consumers Grp. v. FERC*, 930 F.2d 926, 929 (1991) (cleaned up)

On the other hand, in *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 985 F.3d 1032 (D.C. Cir. 2021), this Court held that a

8

violation of NEPA procedures—preparation of an environmental assessment instead of an EIS—required vacatur and remand. *Id.* at 1052. There, the agency had provided for *some* public participation: the Corps had circulated a draft environmental assessment for public comment. *Id.* at 1040. But because NEPA is a "purely procedural statute," it would be "vitiate[d]" if agency action could be left in place despite "significant" NEPA violations. *Id.* at 1052 (quotation omitted).

Of course, in other cases, this Court has held that a violation of NEPA procedures, including relying on information not presented in the EIS, was harmless. *Friends of the River*, 720 F.2d at 106; *Oglala Sioux Tribe v. Nuclear Regulatory Comm'n*, 45 F.4th 291, 301 (D.C. Cir. 2022), *Nat. Res. Def. Council*, 879 F.3d at 1210 . But none establish a bright-line rule that agencies need not prepare a supplemental EIS so long as they provide some public process. Instead, these cases rest on fact-specific findings that the particular errors were harmless and remand would serve no purpose in those cases. Opening Br. 36-38.

Here, the Court cannot be confident that "there is nothing to be gained" by a remand. *Natural Resources Defense Council*, 879 F.3d at 1210. The procedures FERC provided fell far short of those required for a

9

supplemental EIS. Especially in light of the substantive errors in FERC's new analysis, it is likely that if the public had a more robust opportunity to review and comment prior to FERC's decision, that decision would have changed.

Compared with a draft supplemental EIS, FERC's September 2022 solicitation, R.2922 [JA___], asked the public to comment on material that was harder to understand while providing less time to understand it. Opening Br. 31-34. Requirements such as minimum comment periods exist for a reason, and this Court can presume that violating them impairs the effectiveness of public participation. No authority suggests that Vecinos must demonstrate what Vecinos would have said if FERC had provided 45 days to comment on a hypothetical draft supplemental EIS.

Moreover, FERC did not solicit comments on the modeling or demographic information that underlies FERC's environmental justice analysis. FERC argues that an early version of this data was available in March 2022. FERC Br. 64-65 (citing R.2825 [JA___]); *accord* Rio Grande Br. 11. But FERC did not solicit comments on this document. R.2922, 2 [JA___] (identifying three other applicant submissions). The public

10

cannot be required to *sua sponte* comment on every applicant submission just in case FERC decides, in violation of NEPA, to both (1) rely on that submission and (2) decline to provide a formal opportunity to comment thereon.

## II.  AIR QUALITY AND ENVIRONMENTAL JUSTICE

### A.  FERC's Air Quality Estimates Ignored Important Data

#### 1.  Particulate Matter

FERC does not dispute that data from the Isla Blanca monitor is valid and accurate, and that if this data was used, the modeling would have predicted that $PM_{2.5}$ pollution would exceed the NAAQS. FERC's argument that it could nonetheless ignore this data is wrong.

Even assuming FERC could limit its NEPA analysis to monitors with three years of data, FERC makes no attempt to reconcile (1) its claim that three years of data from Isla Blanca was not available with (2) its admission that Isla Blanca "began collecting reliable data in October 2019," thirty-nine months before the January 2023 air modeling. FERC Br. 42.

Rio Grande argues that although three years of data from the Isla Blanca monitor was available from the Texas Commission on Environmental Quality, it had not been published and "validated" by EPA. Rio Grande Br. 20. FERC's analysis cannot be affirmed on an argument FERC did not make. *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943). This argument is also meritless. FERC cited EPA's regulatory definition of "valid" data. Rehearing Order P27 n.63 [JA___]. Data is valid if the monitor reported for a certain number of days each quarter. 40 C.F.R. Pt. 50, App. N, §§ 4.1-4.2. The regulation further explains how to average reported values. *Id.*; *Catawba Cnty., N.C. v. EPA*, 571 F.3d 20, 30 (D.C. Cir. 2009) (summarizing these calculations). FERC can count days and calculate an average as well as EPA can. And Rio Grande does not dispute that data from the Isla Blanca monitor was in fact valid.

Nor does *Village of Bensenville v. FAA*, 457 F.3d 52, 71 (D.C. Cir. 2006) justify FERC's choice to ignore data that became available after FERC began its analysis. *Bensenville* held that use of new data was not required where the agency explained "its professional judgment that the later data would not alter its conclusions." *Id.* FERC did not provide any such explanation here, nor could it. More broadly, agencies act arbitrarily

12

when they entirely fail to consider new information submitted before issuance of a final decision, even if that information became available after the agency started its analysis. *Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 195 (D.C. Cir. 2010).

Vecinos do not challenge FERC's use of the Brownsville monitor to predict impacts near Brownsville. But FERC must evaluate impacts on the Port Isabel area as well, including on environmental justice populations. FERC provided no explanation as to why the Brownsville monitor was "adequately representative" of conditions near Port Isabel when the Isla Blanca monitor is roughly 20 miles closer to the city and reports higher pollution levels.

### 2. Ozone

In the 2020 Rehearing Order, FERC found that the cumulative impact of air pollution from ships serving the LNG terminals could significantly increase ozone impacts, causing NAAQS violations that would not otherwise occur. Vecinos' 2023 rehearing request asked a simple question: did the new ozone modeling the Remand Order relied on account for ship emissions? R.3021, 19 [JA____]. This question requires a

"yes" or "no" answer. FERC still has not provided one. Intervenors, however, apparently acknowledge that ship emissions were omitted. Rio Grande Br. 23. This omission was arbitrary.

FERC's assertion that the new ozone modeling complied with guidance interpreting the Clean Air Act's Prevention of Significant Deterioration program is irrelevant. FERC Br. 44. That program does not regulate, and EPA's program-specific modeling guidance does not call for inclusion of, foreseeable future mobile sources like these ship emissions.[3] NEPA, however, requires FERC to consider reasonably foreseeable indirect effects, 40 C.F.R. § 1508.1(g)(2), which plainly include the ship traffic necessary for operation of the Rio Grande and Texas LNG terminals.

Nor does the fact that the new analysis predicts lower stationary source emissions mean that ship emissions are irrelevant. Total ozone levels could be lower than FERC previously predicted but still exceed the NAAQS: FERC previously predicted that when cumulative ozone impacts were considered, the NAAQS could be exceeded by nearly 10%. 2020

---

[3] *See, e.g.,* https://www.epa.gov/system/files/documents/2022-08/2022 Guidance O3 and Fine PM Modeling.pdf at 43-44.

Rehearing Order P55 [JA___-___]. FERC must address whether cumulative emissions, even if reduced, still cause exceedance of this threshold; FERC cannot simply assume that these emissions are irrelevant. *See Sierra Club v. EPA*, 356 F.3d 296, 304 n.4 (D.C. Cir. 2004) (explaining that the way in which ozone precursor emissions react to form ozone is "complex").

Although *Vecinos* did not instruct FERC to redo its ozone analysis on remand, once FERC chose to do so, it could not do so arbitrarily. *Canadian Ass'n of Petrol. Producers v. FERC*, 254 F.3d 289, 298-99 (D.C. Cir. 2001). Nor does the fact that *Vecinos II* upheld FERC's prior ozone analysis (which *included* ship emissions) preclude Vecinos from challenging FERC's failure to consider ship emissions here. *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002).

## B. FERC Failed to Adequately Analyze Environmental Justice Impacts

FERC's environmental justice analysis is separately flawed, because FERC failed to explain whether and how it concluded that air pollution would have disproportionate and adverse effects on

15

environmental justice communities, and because FERC's scope of analysis was not tethered to actual impacts.

1.  **FERC Has Not Provided A Coherent Explanation of Whether Air Pollution Will Disproportionately Adversely Affect Environmental Justice Communities**

FERC agrees that it must evaluate whether individual effects, such as air pollution, will have disproportionately adverse impacts on environmental justice communities. But FERC's brief, like FERC's orders, fails to explain what FERC thinks this means, or FERC's ultimate conclusion.

Impacts that are not "significant" for NEPA purposes can still have a disproportionately adverse effect on environmental justice communities. Opening Br. 41-42. FERC appears to argue that this is not the case here. FERC Br. 38-40. FERC claims that because the environmental justice communities here are not unusually susceptible to air pollution, FERC's finding of insignificance entails the conclusion that air pollution "*would not ... have a disproportionately adverse impact* as compared to the broader population." FERC Br. 40 (emphasis added). This appears to affirm Vecinos' reading of the Remand Order: the fact

that the air analysis discussed significance without discussing whether impacts would be disproportionately adverse reflected FERC's mistaken assumption, in that analysis, that insignificant impacts could not present an environmental justice problem. Opening Br. 41.

Elsewhere, however, FERC's brief argues that air pollution *would* disproportionately adversely affect environmental justice communities. FERC Br. 35, 36. FERC argues that the Remand Order's summary statement that in general, impacts on environmental justice populations "*would be disproportionately high and adverse* because they would be predominately borne by environmental justice communities" applied specifically to air pollution (and every other impact). *Id.* at 35 (quoting Rehearing Order P206 [JA___]) (emphasis added).

FERC has not reconciled its statements that air pollution both "would" and "would not" have disproportionate and adverse impacts on environmental justice communities. This Court "may not supply" a missing reconciliation of apparently conflicting statements. *Coburn v. McHugh*, 679 F.3d 924, 934 (D.C. Cir. 2012) (quotation omitted). Because FERC's path cannot "reasonably be discerned," *id.*, FERC's analysis was arbitrary.

17

### 2. FERC's Scope of Environmental Justice Analysis Does Not Reflect Actual Impacts

FERC also cannot determine whether impacts disproportionately fall on environmental justice communities without first identifying who will be impacted. Opening Br. 43-44. FERC did not do so here. FERC's discussion of environmental justice rests on a summary of the demographics of all census blocks within 50 kilometers of the terminal. The 50-kilometer radius does not represent any judgment about impacts of this project; it is simply the maximum radius for which air impacts can be modeled. FERC Br. 20, 34. FERC did not discuss which or how many of those communities would actually be adversely affected by the project.

Vecinos do not dispute that 50 kilometers was an appropriate scope for the threshold question of modeling *whether* individual communities would be impacted by air pollution. But FERC failed to look at the *results* of that modeling and see which communities will actually be impacted.[4] FERC argues that unlike the underinclusive, 2-mile radius FERC used in

_____

[4] *See, e.g.,* Case 20-1045, Opening Brief, Doc. #1862921 at 39, 48 (arguing that limiting environmental justice analysis to communities within two miles was arbitrary when FERC's modeling predicted peak ozone impacts 6.2 miles from the terminal).

*Vecinos*, the 50-kilometer radius is "broad enough to encompass all possible impacts." FERC Br. 34. But FERC does not dispute that the new analysis is overinclusive, and includes communities that will not be meaningfully adversely impacted.[5]

FERC's continued failure to tether its environmental justice analysis to FERC's conclusions about actual impacts is itself arbitrary. This overinclusivity also has consequences for the rest of FERC's analysis. The question was not whether environmental justice communities would be *disproportionately* impacted. FERC has not explained how its summary of the demographics of all communities within 50 kilometers enabled FERC to conclude that impacts on environmental justice communities would or would not be disproportionate. Opening Br. 43.

Vecinos' rehearing request exhausted this argument. Vecinos argued that FERC could not treat all communities within 50 kilometers

_____

[5] FERC stated that "the radius of impact (*i.e.*, the distance at which a criteria pollutant falls below the defined significant impact level) is approximately 12.8 kilometers." Remand Order P118 [JA___]. *Accord* FERC Br. 41. But FERC has not identified any role significant impact levels played in FERC's environmental justice analysis.

as impacted, and that FERC was instead "required to identify which communities would actually experience impacts." Rehearing Request, 5 [JA___]. Vecinos further argued that in making that determination, FERC should not solely rely on "significant impact levels," and that FERC therefore needed to consider communities more than 12.8 kilometers from the terminal. *Id.* at 29 n.83 [JA___]. But arguing that FERC needed to consider *some* communities more than 12.8 kilometers away did not waive Vecinos' challenge to FERC's over-inclusion of *all* communities within 50 kilometers.

## III.  GREENHOUSE GAS EMISSIONS

Like *Vecinos*, this case challenges FERC's conclusion that it could not determine the "significance" of the projects' greenhouse gas emissions, including whether these constituted a "significant" impact. Remand Order P93 [JA___], Rehearing Order P58 [JA___]. *Accord Vecinos*, 6 F.4th at 1328.

As we explain *infra*, FERC's orders did not dispute that FERC was required to form a judgment about significance if it was possible to do so;

FERC's arguments to the contrary are both barred and incorrect. FERC could have formed a case-specific determination that the 7.2 million tons per year of greenhouse gas emissions at issue here were plainly significant, as in *Northern Natural Gas*, 174 FERC ¶ 61,189 (Mar. 22, 2021). But given FERC's refusal to do so, and FERC's insistence that it lacked a method for evaluating significance, 40 C.F.R. § 1502.21(c) required FERC to use methods "generally accepted in the scientific community." The social cost of carbon is such a method, and is accepted in the particular context of project-level NEPA review; FERC fails to identify a single agency or entity that does *not* accept the tool in this context. FERC could form a judgement as to whether monetized impacts were significant without need for a general standard, as FERC routinely does for other impacts. And the fact that FERC provided an estimate of the social cost of carbon does not excuse FERC's explicit refusal to consider that estimate in FERC's own analysis, or to explain how greenhouse gases (whether viewed through the lens of social cost of carbon or otherwise) factored into FERC's decisionmaking.

21

## A. FERC's Orders Did Not Dispute That FERC Was Required to Determine the Significance of Greenhouse Gas Emissions, If Possible

FERC acted arbitrarily in concluding that there was no "scientifically accepted method that would enable the Commission to determine the significance of reasonably foreseeable GHG emissions," Remand Order P93 [JA___], and in deciding "not [to] characterize these emissions as significant or insignificant" based on FERC's assertion that "there currently are no accepted tools or methods for the Commission to use to determine significance." Rehearing Order P58 [JA___].

FERC now argues that even if there *was* a method for determining the significance of greenhouse gases, that FERC could decline to do so. FERC Br. 51-52. The Remand and Rehearing Orders did not make this argument, so FERC cannot do so now. *See, e.g., Temple Univ. Hosp., Inc. v. NLRB*, 929 F.3d 729, 736-37 (D.C. Cir. 2019). And since the Remand Order did not argue that FERC could decline to determine significance even if it was possible to do so, Vecinos' rehearing request cannot be faulted for failing to rebut such an argument. *Columbia Gas Transmission Corp. v. FERC*, 477 F.3d 739, 742-44 (D.C. Cir. 2007). Nor is this argument somehow insulated from judicial review as outside the

scope of the *Vecinos* remand; *inter alia*, it is a new argument that wasn't made in *Vecinos* either. Case No. 20-1045, FERC Response Brief, Doc. #1862983, 60-68 (Sept. 23, 2020).

This post-hoc argument is also meritless. An EIS must take a hard look at "environmental impacts … and the significance of those impacts." 40 C.F.R. § 1502.16(a)(1). FERC's regulations require it to identify "the significant environmental impacts of the proposed action." 18 C.F.R. § 380.7(a). FERC's practice is to determine whether all other impacts are significant. FERC Br. 60. No caselaw suggests that an agency may simply decline to determine significance. The post-*Vecinos* cases respondents cite rest on the holding that *Vecinos* arguments had been waived, and that without such arguments, nothing disturbed FERC's conclusion that FERC was "unable to assess" impacts on climate change. *Ctr. for Biological Diversity v. FERC*, 67 F.4th 1176, 1184 (D.C. Cir. 2023); *accord Del. Riverkeeper Network v. FERC*, 45 F.4th 104, 112 (D.C. Cir. 2022); *Food & Water Watch v. FERC*, 28 F.4th 277, 290 (D.C. Cir. 2022).

There is good reason for the requirement to determine significance. Doing so informs the public and decisionmakers, and has specific

consequences for FERC's analysis and decisionmaking. Aside from the

general NEPA obligation to prepare an EIS where *any* impact is

significant, FERC must discuss mitigation for *each* individual significant

impact. 18 C.F.R. § 380.7(d), *Interim GHG Policy*, 178 FERC ¶ 61,108,

PP79, 106 (Feb. 18, 2022). FERC also applies its NEPA significance

determinations in its Natural Gas Act evaluation of the public interest,

disregarding impacts that FERC has deemed insignificant. Remand

Order P207 [JA___].


## B.  FERC Could Have Used Its *Northern Natural Gas* Approach

FERC could have avoided this situation by following its approach

from *Northern Natural Gas*, 174 FERC ¶ 61,189. *See* Opening Br. 58-59.

There, FERC concluded that although it had not yet decided the precise

line separating significant from insignificant greenhouse gas emissions,

FERC had no doubt which side of the line that project's emissions (only

315 tons per year) were on. 174 FERC ¶ 61,189 PP29, 33. So too here.

The projects' 7.2 million tons per year of emissions are *72 times* greater

than FERC's draft 100,000 tons-per-year significance threshold, 178

FERC ¶ 61,108, P79,  which is itself equal to or greater than any

24

threshold proposed by any other agency, *id.* PP93-95. Though FERC

notes this was just "one case," FERC Br. 50, it offers no argument as to

why it could not make a similar case-specific adjudication here, or why

emissions of this magnitude could possibly be considered insignificant.

FERC acted arbitrarily by failing either to follow the approach it used in

*Northern Natural* or to provide a rational explanation as to why this case

is different. *Gulf S. Pipeline Co., LP v. FERC*, 955 F.3d 1001, 1011-12

(D.C. Cir. 2020) (holding that FERC had failed to distinguish *Texas*

*Eastern Transmission*, 139 FERC ¶ 61,138 (May 21, 2012)).

## C.  Social Cost of Carbon Is Generally Accepted, Including for Project-Level NEPA Review

FERC argues that the social cost of carbon is not a method

"generally accepted in the scientific community," within the meaning 40

C.F.R. § 1502.21(c), by recasting the Remand and Rehearing Orders'

criticisms of social cost of carbon as arguing that the tool is not generally

accepted for use in the particular context of project-level NEPA review.

FERC Br. 3, 5-6, 47.[6]

---

[6] FERC does not dispute that determining the significance of
greenhouse gases was "information relevant to reasonably foreseeable
significant adverse impacts" within the meaning 40 C.F.R. § 1502.21(c).

FERC is empirically incorrect. The Council on Environmental Quality, Bureau of Land Management, Bureau of Ocean Energy Management, Maritime Administration, and Office of Surface Mining Reclamation all accept social cost of carbon as a method for evaluating greenhouse gas emissions in the context of project-level NEPA review. Opening Br. 53-54.[7] On the other hand, respondents do not identify a single other agency or member of the scientific community that does *not* accept social cost of carbon in this context. As a matter of observable fact, social cost of carbon is generally accepted for project-level NEPA review.

FERC apparently believes that social cost of carbon *shouldn't* be generally accepted, but that is not the question § 1502.21(c) or *Vecinos* ask. Because social cost of carbon is generally accepted, and because FERC did not evaluate the impact of greenhouse gases using any other method, FERC was required to use social cost of carbon

---

[7] EPA has repeatedly commented that FERC should use social cost of carbon for project-level NEPA reviews. *See, e.g.*, EPA, Comments on Commonwealth LNG Project Draft EIS, at 3 (May 23, 2022), *available at* https://elibrary.ferc.gov/eLibrary/filelist?accession_Number=20220523-5141

"notwithstanding" FERC's concerns regarding the tool. *Vecinos*, 6 F.4th at 1329.

Insofar as it is relevant, other agencies have considered FERC's specific criticisms, and accepted and used social cost of carbon for project level review despite them. The scientific community has determined that FERC's concern over how to evaluate "long-time horizon[s]," FERC Br. 46, can be addressed by presenting estimates using a range of discount rates. *Vecinos*, 6 F.4th at 1329, *accord* R1212, Ex.82 at 17-18, 23 [JA___-___, ___]. Nor would it be misleading to monetize some impacts without conducting a full cost benefit analysis. FERC already does this, EIS, 4-212 – 4-213 [JA___-___], and the Council on Environmental Quality has stated that using social cost of carbon is "appropriate and valuable … even if no other costs or benefits are monetized." Council on Environmental Quality, *Interim NEPA Guidance on Consideration of Greenhouse Gas Emissions*, 88 Fed. Reg. 1196, 1202 (Jan. 9, 2023).

### D.  FERC Does Not Need Other Agencies to Define When Monetized Impacts Become Significant

FERC next argues that even if the social cost of carbon is a generally accepted method for translating tons of emissions into monetized value of social harm, FERC cannot decide whether $6.6 billion worth of harm is "significant" without a generally accepted threshold. Remand Order P93 [JA___]; Rehearing Order P57 [JA___].

FERC routinely determines whether non-greenhouse-gas impacts are significant without such general thresholds, and FERC offers no explanation as to why greenhouse gases are different. Opening Br. 55-57, For example, here, FERC determined that the cumulative visual impact of the Rio Grande LNG and Texas LNG terminals could be significant. Remand Order P163 [JA___]. In making this determination, FERC did not refer to any universal standard or established threshold for how large a structure must be, how bright lights must be, etc., to constitute a significant impact. *Id.* Nor does FERC have any particular expertise or responsibilities regarding scenery. But for this and numerous other impacts, FERC exercised a policy judgment to determine significance.

28

The social cost of carbon helps FERC in this endeavor even though FERC must then pass judgment on whether monetized values are significant. Section 1502.21(c) provides that when there is missing information, the agency must "evaluate" the issue with generally accepted tools. Nothing in the regulation limits this obligation to tools that fully resolve all outstanding issues or provide a bright-line significance threshold, FERC Br. 50. Indeed, if the regulation only applied to methods that incorporated a threshold for NEPA significance, it would rarely, if ever, actually apply. Here, once FERC estimated the $6.6 billion in climate harm, FERC could evaluate the significance of this impact just as easily as scenery impacts.

Although *Center for Biological Diversity*, *etc*. identified uncertainty over significance thresholds as one of three factors supporting FERC's refusal to use social cost of carbon, respondents offer no argument as to why that holding applies here, where section 1502.21(c) arguments have not been waived, and where nothing in those cases indicates that lack of a significance threshold, standing alone, would have supported the courts' conclusions. *See* Opening Br. 56-57.

29

### E. FERC's Limited Discussion of Greenhouse Gas Impacts Fell Short of FERC's NEPA and Natural Gas Act Obligations

FERC explicitly refused to "determine the significance" of greenhouse gas emissions. Remand Order P93 [JA___], *accord* Rehearing Order P58 [JA___]. FERC now claims that it nonetheless "addressed" these emissions, FERC Br. 51-53, but what FERC provided did not satisfy NEPA or the Natural Gas Act.

Unlike social cost of carbon, expressing project emissions as a percentage of state and national totals, FERC Br. 52, provides no indication of the actual effects of the action, including the scale of impacts on "ecological … aesthetic, historic, cultural, economic, social, or health" resources. 40 C.F.R. § 1508.1(g)(4). Comparison with emission inventories is also unsuitable for cumulative problems like climate change: after all, "a small fraction of a large number can still be a large number." *Bd. of Cnty. Commissioners of Weld Cnty., Colorado v. EPA*, 72 F.4th 284, 291 (D.C. Cir. 2023). Accordingly, the Council on

Environmental Quality,[8] EPA,[9] courts,[10] and even FERC's own draft greenhouse gas policy[11] agree that comparison with emission inventories is not an adequate way to discuss greenhouse gas emissions.

Nor does the fact that FERC estimated social cost of carbon satisfy FERC's obligations, given FERC's refusal to consider this estimate in its own analysis. Remand Order P94 [JA___]. NEPA requires analysis to inform the agency's own decisionmaking, as well as the public. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). The Natural Gas Act requires FERC to decide whether to "deny" or modify the projects "on the ground that" the projects, including their greenhouse gas emissions, "would be too harmful to the environment." *Sabal Trail,* 867 F.3d at 1373. But here, FERC explicitly excluded climate impacts from FERC's Natural Gas Act assessment. Putting the cart before the horse, FERC concluded that "the benefits of the project show that the project is not inconsistent with the public interest" and that in light of this

_____

[8] 88 Fed. Reg. at 1201.
[9] EPA Comments on Commonwealth Draft EIS, *supra* note 7 at 2.
[10] *Dine Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1043-44 (10th Cir. 2023).
[11] 178 FERC ¶ 61,108, P96.

showing, FERC's professed inability to evaluate climate impacts was irrelevant. 2020 Rehearing Order P111 [JA___]. This irrational method of analysis "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## IV. CARBON CAPTURE AND SEQUESTRATION

FERC has not justified its refusal to consider carbon capture as an alternative or a connected action in this proceeding.

**First**, this claim is not barred. *Vecinos* did not "only," FERC Br. 72, remand for consideration of 40 C.F.R. § 1502.21; *Vecinos* also commanded FERC to reconsider its Natural Gas Act determinations. 6 F.4th at 1331. These include whether the terminal is in the "public interest," 15 U.S.C. § 717b(a), and whether "modifications" to the terminal are "necessary or appropriate," § 717b(e)(3)(A). Nor are claims about carbon capture precluded, because they arise out of new facts: Rio Grande's own actions in response to *Vecinos*. *Drake*, 291 F.3d at 66. And new facts can trigger a

32

NEPA duty to supplement that exists independent of the *Vecinos* remand. *Supra* Part I.A.

**Second**, it is *Vecinos*, not the new information about this alternative, that "call[ed] [FERC's] prior approval into question," FERC Br. 73, by holding that FERC failed to take a hard look at greenhouse gas impacts or to demonstrate that these impacts did not render the terminal contrary to the public interest. 6 F.4th at 1331. Unlike *Capital Crescent*, this is not a case where the harms and their acceptability have been "already considered." *Friends of Cap. Crescent Trail*, 877 F.3d at 1060. The Authorization Order explicitly declined to provide a "rationale" for approving a project that will cause $6.6 billion in climate harm. *Id.* at 1061. But even if it had done so, that rationale would be "undercut," *id.* by new information showing that the majority of these harms could be avoided while still allowing the project to provide its purported benefits.

**Third**, FERC's choice of process has substantive consequences. While FERC asserts that carbon capture is "amenable to separate NEPA analys[i]s," FERC Br. 68, it does not dispute—or even acknowledge—that if FERC does not consider this feasible alternative before reauthorizing the project, FERC may not have another chance to it. Opening Br. 67-68.

33

**Fourth**, Rio Grande's carbon capture proposal is also a connected action. FERC argues that the terminal "could," technically, proceed without carbon capture. FERC Br. 70. The regulation asks whether actions cannot "*or will not*" procced without other actions. 40 C.F.R. § 1501.9(e)(1)(ii) (emphasis added). Rio Grande continues to hold carbon capture out as an integral part of the project, Opening Br. 62, and does not argue that Rio Grande *would* complete the project without carbon capture. And respondents agree that the carbon capture project will not proceed without the terminal. The timing of the proposals further indicates that they are connected: Rio Grande explicitly asked for carbon capture to be considered in reevaluation of the Terminal as part of the *Vecinos* remand. Opening Br. 63.

## V. REMEDY

Vacatur is the default remedy for unlawful agency action. *Am. Pub. Gas Ass'n v. U.S. Dep't of Energy*, 72 F.4th 1324, 1343 (D.C. Cir. 2023). Respondents thus bear the burden of showing vacatur should not apply. *Eagle County, Colorado v. Surface Transp. Bd.*, 82 F.4th 1152, 1196 (D.C. Cir. 2023) (vacating when respondents presented no arguments that

would justify "depart[ure] from our normal practice"). FERC does not address remedy. Rio Grande has not shown that vacatur is inappropriate.

First, FERC's errors here are serious. FERC failed to use the NEPA process and skipped several required analyses. Thus, the issue is whether FERC "could, with further explanation, justify its decision to skip [those] procedural step[s]." *Standing Rock Sioux Tribe,* 985 F.3d at 1052. Respondents provide no reason to think that FERC will be able to do that. Moreover, FERC already had an opportunity to substantiate its decision on remand, but has "yet again come up with insufficient support." *Am. Pub. Gas*, 72 F.4th at 1343 (quotation omitted).

Second, even if vacatur would have disruptive consequences, FERC could minimize them by acting expeditiously on remand. Where FERC has faced the prospect of vacatur, FERC has acted quickly. After the opinion was issued in *Sabal Trail*, FERC issued a draft supplemental EIS for public comment in one month, and FERC reapproved the project on remand within seven months. *Florida Southeast Connection*, 162 FERC ¶ 61,233, PP10, 12, 14 (Mar. 14, 2018). On the other hand, where *Vecinos* remanded without vacatur, FERC waited six months after issuance of the opinion to issue its first environmental information

35

request, Remand Order P82 [JA___], and even though FERC declined to provide any NEPA process, FERC still took two years to issue a renewed decision.

Accordingly, vacatur is the appropriate remedy.

## CONCLUSION

For the foregoing reasons, the Court should grant the petition and vacate FERC's orders approving the Rio Grande terminal and Rio Bravo pipeline.

Dated: March 4, 2023

Respectfully submitted,

/s/ Nathan Matthews
Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org

Lisa M. Diaz
Sierra Club
910 Julia Street

New Orleans, LA 70113
305-336-2258
lisa.diaz@sierraclub.org

Tom Gosselin
Sierra Club
P.O. Box 4998
Austin, TX 78723
424-346-3276
tom.gosselin@sierraclub.org

*Attorneys for Carrizo Comecrudo*
*Tribe of Texas, Sierra Club, and*
*Vecinos para el Bienestar de la*
*Comunidad Costera*


*/s/ Gilberto Hinojosa*
Gilberto Hinojosa
531 E. St. Francis St.
Brownsville, Texas 78520
(956) 554-4218
ghinojosa@ghinojosalaw.net
Attorney for City of Port Isabel

37

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure Rule 32(g)(1), I certify that the foregoing brief complies with:

1. the type-volume limitations established by this Court's November 15, 2023 briefing order, setting a limit of 6,500 words for Petitioners' reply brief, because this brief contains 6,488 words, excluding the parts of the brief exempted by Rule 32(f); and

2. the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point) using Microsoft Word (the same program used to calculate the word count).

*/s/ Nathan Matthews*
Nathan Matthews
Sierra Club
2101 Webster St., Suite 1300
Oakland, CA 94612
415-977-5695
nathan.matthews@sierraclub.org
*Attorney for Carrizo Comecrudo Tribe of Texas, Vecinos para el Bienestar de la Comunidad Costera, and Sierra Club*

38

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of March, 2024, I have served the foregoing Joint Opening Brief for Petitioners, including the Addendum thereto, on all registered counsel through the Court's electronic filing system (ECF).

> _/s/ Nathan Matthews_
> Nathan Matthews
> Sierra Club
> 2101 Webster St., Suite 1300
> Oakland, CA 94612
> 415-977-5695
> nathan.matthews@sierraclub.org
>
> _Attorney for Carrizo Comecrudo Tribe of Texas, Vecinos para el Bienestar de la Comunidad Costera, and Sierra Club_