Case No. 23-1174 (consolidated with 23-1221)

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

CITY OF PORT ISABEL, ET AL.,
Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
Respondent,

RIO BRAVO PIPELINE COMPANY, LLC AND RIO GRANDE LNG,
LLC,
Intervenors.

_____

On Petition for Review of Orders of the Federal Energy Regulatory Commission,
183 FERC ¶ 61,046 (Apr. 21, 2023) and 183 FERC ¶ 61,047 (Apr. 21, 2023)

_____

**BRIEF OF *AMICI CURIAE* TOTALENERGIES GAS & POWER
NORTH AMERICA, INC., EXXON MOBIL CORPORATION, GALP
TRADING S.A., SHELL NA LNG LLC, AND ITOCHU CORPORATION,
SUPPORTING RESPONDENT-INTERVENOR RIO GRANDE LNG, LLC'S
PETITION FOR REHEARING OR REHEARING *EN BANC***

Aaron M. Streett
Bill Kroger
Matthew P. Erickson
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1234
*Counsel for Exxon Mobil
Corporation, Galp Trading S.A., and
Shell NA LNG LLC*

Stephen M. Nickelsburg
Marcia Hook
Catrina Crittenden
CLIFFORD CHANCE US LLP
2001 K Street NW
Washington DC 20006
(202) 912-5000
*Counsel for TotalEnergies Gas &
Power North America, Inc.*

Additional Counsel on Following Page

Nicole A. Saharsky
Mark C. Williams
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000
*Counsel for ITOCHU Corporation*

# CERTIFICATE AS TO PARTIES, RULINGS, RELATED CASES, AND CORPORATE DISCLOSURE

## I.    Parties and *Amici*

Except for the following, all parties, intervenors, and *Amici* appearing in this case are listed in the Petition for Rehearing or Rehearing *En Banc* of Intervenor Rio Grande LNG, LLC: Exxon Mobil Corporation, Galp Trading S.A., ITOCHU Corporation, Shell NA LNG LLC, TotalEnergies Gas & Power North America, Inc., and Brownsville Navigation District of Cameron County, Texas.

## II.    Ruling Under Review

References to the rulings at issue appear in the Petition for Rehearing or Rehearing En Banc of Intervenor Rio Grande LNG, LLC.

## III.    Related Cases

References to related cases appear in the Petition for Rehearing or Rehearing En Banc of Intervenor Rio Grande LNG, LLC.

## IV.    Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure Rule 26.1 and D.C. Circuit Rule 26.1:

TotalEnergies Gas & Power North America, Inc. states that it is an indirect, wholly owned subsidiary of TotalEnergies SE, whose American Depositary Receipts are publicly traded on the New York Stock Exchange.  In addition, a sister company

iii

of TotalEnergies Gas & Power North America, Inc. holds a 16.67% interest in Rio Grande LNG Intermediate Holdings, LLC, which indirectly owns 100% of Rio Grande LNG, LLC.

Exxon Mobil Corporation certifies that it is incorporated in the State of New Jersey, that it does not have a parent corporation, that its stock is publicly traded on the New York Stock Exchange, and that no publicly held company owns ten percent or more of its stock.

Galp Trading, SA, which is incorporated in Switzerland, is a fully owned subsidiary of Galp Energia, E&P BV, a Dutch entity. Galp Energia, E&P BV is fully owned by Galp Energia SGPS, SA, a Portuguese entity. Galp Energia SGPS, SA is listed on the Euronext Lisbon stock exchange. Amorim Energia BV, which is incorporated in the Netherlands, owns 35.76% of Galp Energia SGPS, SA's shares. No other publicly held company has a 10% or greater ownership interest in Galp Energia SGPS, SA.

Shell NA LNG LLC is a wholly, directly owned subsidiary of Shell NA Gas & Power Holding Company, a Delaware corporation. Shell NA Gas & Power Holding Company is a wholly, directly owned subsidiary of Shell USA, Inc., a Delaware corporation. Shell USA, Inc. is a wholly, directly owned subsidiary of Shell Petroleum Inc., a Delaware corporation. Shell Petroleum Inc. is a wholly, directly owned subsidiary of Shell Group Holding Limited, a UK private limited

company.  Shell Group Holding Limited is a wholly, directly owned subsidiary of Shell plc, a UK listed company whose shares are publicly traded.

ITOCHU Corporation certifies that it is a Japanese corporation, that it does not have a parent corporation, and that no publicly held corporation owns ten percent or more of its stock.

## CERTIFICATE REGARDING SEPARATE BRIEFING, CONSENT TO FILE, AND AUTHORSHIP

Pursuant to D.C. Circuit Rule 29(d), counsel for proposed *Amici* TotalEnergies Gas & Power North America, Inc., Exxon Mobil Corporation, Galp Trading S.A., Shell NA LNG LLC, and ITOCHU Corporation certify that, to their knowledge, no other *amicus* brief focuses on the same issues as *Amici*'s brief or the unique perspective *Amici* provide as offtakers who have committed to purchase LNG from the Rio Grande LNG terminal. This *amicus* brief focuses on the harm the Court's August 6, 2024 Opinion will inflict on offtakers who have contracted to purchase LNG from the terminal, as well as the global LNG customers and markets those offtakers serve.

Counsel for Respondent-Intervenor Rio Grande LLC informed counsel for *Amici* that FERC and Respondent-Intervenors Texas LNG Brownsville, LLC, Rio Grande LNG, LLC and Rio Bravo Pipeline Company, LLC have provided blanket consents to the filing of amicus briefs, and that Counsel for Petitioners does not consent to the filing of amicus briefs. Accordingly, pursuant to Federal Rule of Appellate Procedure 29(b)(2), contemporaneously with this brief, *Amici* filed a motion for an invitation to participate as *Amici Curiae*.

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), counsel for *Amici* certifies that (i) no party's counsel authored the brief in whole or in part; (ii) no party or party's counsel contributed money that was intended to fund preparing

vi

or submitting the brief; and (iii) no person—other than the *Amici*, their members, or their counsel—contributed money that was intended to fund preparing or submitting the brief.

# <u>GLOSSARY</u>

| | |
|---|---|
| Authorization | *Order Granting Authorizations Under Sections 3 and 7 of the Natural Gas Act*, 169 FERC ¶ 61,131 (Nov. 22, 2019) |
| FERC | Federal Energy Regulatory Commission |
| LNG | Liquefied Natural Gas |
| MTPA | million tonnes per annum |
| Op. | Opinion (D.C. Cir. Aug. 6, 2024) |
| Reauthorization | *Order on Remand and Amending Section 7 Certificate,* Docket Nos. CP16-454, CP16-455, CP20-481, 183 FERC ¶ 61,046 |
| RGLNG | Rio Grande LNG, LLC |

## **<u>TABLE OF CONTENTS</u>**

CERTIFICATE AS TO PARTIES, RULINGS, RELATED CASES, AND CORPORATE DISCLOSURE..................................................... iii

CERTIFICATE REGARDING SEPARATE BRIEFING, CONSENT TO FILE, AND AUTHORSHIP ............................................................... vi

GLOSSARY ...................................................................................... viii

TABLE OF CONTENTS ...................................................................... ix

TABLE OF AUTHORITIES ...................................................................x

IDENTITY AND INTEREST OF *AMICUS CURIAE* ...............................1

INTRODUCTION ..................................................................................2

SUMMARY OF ARGUMENT ................................................................4

ARGUMENT ........................................................................................5

   I.   THE COURT SHOULD GRANT REHEARING BECAUSE IT DID NOT ASSESS THE EXTRAORDINARY HARM THAT VACATUR WILL CAUSE, INCLUDING TO GLOBAL ENERGY MARKETS. .........................................................5

   II.  THE COURT SHOULD CLARIFY THAT ITS OPINION APPLIES ONLY TO THE ORDER BEFORE IT: THE REAUTHORIZATION ....................................................10

CONCLUSION ...................................................................................12

CERTIFICATE OF COMPLIANCE......................................................13

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                          **Page(s)**

*Allied-Signal v. Nuclear Regulatory Comm'n*,
    988 F.2d 146 (D.C. Cir. 1993) ........................................................... 5

*Am. Clean Power Ass'n v. FERC*,
    54 F.4th 722 (D.C. Cir. 2022) ............................................................ 6

*Healthy Gulf v. FERC*,
    107 F.4th 1033 (D.C. Cir. 2024) ......................................................... 7

*EME Homer City Generation, L.P. v. EPA*,
    795 F.3d 118 (D.C. Cir. 2015) .................................................... 5-6, 10

*Env't Def. Fund v. FERC*,
    2 F.4th 953, 976 (D.C. Cir. 2021) ...................................................... 6

*Heartland Reg'l Med. Ctr. v. Sebelius*,
    566 F.3d 193 (D.C. Cir. 2009) ............................................................ 6

*North Carolina v. EPA*,
    550 F.3d 1176 (D.C. Cir. 2008) .......................................................... 6

*Sugar Cane Growers v. Veneman*,
    289 F.3d 89 (D.C. Cir. 2002) ....................................................... 6, 10

*Vecinos para el Bienestar de la Comunidad Costera v. FERC*,
    6 F.4th 1321 (D.C. Cir. 2021) ........................................................ 7, 11

**Statutes**

15 U.S.C. § 717r(b) ..................................................................... 11

**Rules**

D.C. Cir. R. 41(b) ………………………………………………………………... 11

x

## Other Authorities

*Additional US LNG projects are needed to contribute to Europe's Energy Security*, EUROGAS (Sept. 30, 2024), https://www.eurogas.org/wp-content/uploads/2024/10/260924-FINAL-Eurogas-statement-Additional-US-LNG-projects-needed-to-contribute-to-Europes-Energy-Security.pdf ........................................................................... 10

*D.C. Circuit Rules Against FERC Approval of LNG and Pipeline Projects in South Texas*, SIERRA CLUB (Aug. 6, 2024), https://www.sierraclub.org/press-releases/2024/08/dc-circuit-rules-against-ferc-approval-lng-and-pipeline-projects-south-texas …...……….. 10-11

NextDecade Corp. Form 10-Q (Aug. 14, 2024) …………………………….. 8

*Order Granting Authorizations Under Sections 3 and 7 of the Natural Gas Act*, 169 FERC ¶ 61,131 (Nov. 22, 2019) …...………...………....... 5, 11

*Order on Remand and Amending Section 7 Certificate,* Docket Nos. CP16-454, CP16-455, CP20-481, 183 FERC ¶ 61,046 (Apr. 21, 2023) …………………………………………………….. 2, 7-8, 11

*Russia's War on Ukraine: Analyzing the Impacts of Russia's Invasion of Ukraine on Energy Markets and Energy Security*, INT'L ENERGY AGENCY, https://www.iea.org/topics/russias-war-on-ukraine …...……………. 9

## IDENTITY AND INTEREST OF *AMICI CURIAE*

*Amici* are entities that have committed to buy liquified natural gas ("LNG") from the Rio Grande terminal, which is under construction and scheduled to commence exports in 2027. These entities (the "Offtakers") then sell the LNG to their own customers. *Amici* thus have a substantial interest in the timely completion of the terminal and the outcome of the rehearing petition of Intervenor Rio Grande LNG, LLC ("RGLNG").

TotalEnergies Gas & Power North America, Inc. engages in LNG trading and sales in the U.S. and has executed a 20-year agreement to purchase 5.4 million tonnes per annum ("MTPA") of LNG from the terminal.

Exxon Mobil Corporation, through its indirectly owned subsidiary ExxonMobil Asia Pacific Pte. Ltd., engages in the purchase, marketing, and sale of LNG across the world. ExxonMobil Asia Pacific Pte. Ltd. has executed a 20-year agreement to purchase 1 MTPA of LNG from the terminal.

Galp Trading, SA engages in the international trading of energy commodities, including natural gas. Galp Trading, SA has contracted to purchase approximately 1 MTPA of LNG from the terminal over a 20-year period.

Shell NA LNG LLC, along with its affiliates, plays a key role in the global energy market, focusing on the purchase, transportation, and sale of LNG. Consistent with Shell's broader strategy of expanding its LNG portfolio to meet

the growing global demand for natural gas, a cleaner alternative to other fossil fuels, the company secured a contract to purchase approximately 2 MTPA of LNG from the terminal over a 20-year period.

ITOCHU Corporation is one of Japan's leading general trading and investment companies with significant participation in the energy sector and has executed a 15-year agreement with RGLNG to purchase 1 MTPA of LNG for use by multiple end users.

## **INTRODUCTION**

This Court's Opinion has created a state of emergency for the Offtakers by vacating the Federal Energy Regulatory Commission's ("FERC") Reauthorization[1] of the Rio Grande terminal. Billions of people worldwide rely on natural gas to warm their homes, cook their food, and meet other basic human needs. Many countries rely on natural-gas-fired plants to power their electrical grids. Some developing countries without reliable grids directly power their industrial facilities with natural gas. The business of meeting these needs is global, intricate, and interdependent.

LNG terminals are indispensable components of that complex ecosystem. But an LNG terminal is just one piece. A whole host of actors coordinate to extract,

---

[1] *Order on Remand and Amending Section 7 Certificate,* Docket Nos. CP16-454, CP16-455, CP20-481, 183 FERC ¶ 61,046 (Apr. 21, 2023) ("Reauthorization").

2

process, transport, and supply natural gas to the customers who need it. Disruption to any part of the supply chain affects all the others.

"Offtakers" are a crucial link in this supply chain. They buy LNG from the terminal, which they sell to their own customers. These transactions are achieved through complex, multi-billion-dollar agreements negotiated years in advance. Here, the Offtakers have entered into agreements to purchase 10.4 MTPA of LNG from the Rio Grande terminal, for terms of fifteen to twenty years, beginning when the terminal commences supply. In turn, the Offtakers have obligations to customers all over the world. In short, the Offtakers are depending on the timely startup of the terminal to help supply the world's natural gas.

The importance of ensuring stable and reliable LNG supply cannot be overstated. Most of the LNG the Offtakers purchase from the terminal will be sold to customers in Europe and Asia. This is a critical time for energy security in Europe, during a global supply squeeze caused in part by the Russian invasion of Ukraine. This contracted-for supply also will provide an alternative form of energy that is less emissive than coal, particularly in Asia. The 16.2 MTPA that all offtakers have committed to buy from the first three trains of the terminal is enough to meet more than 4% of the world's current LNG demand.

Construction of the terminal has already begun, and the Offtakers would be substantially harmed by any delay or suspension that upsets its timely startup. As

3

this Court considers RGLNG's Petition, the Offtakers emphasize the significant harm caused by the Court's decision to vacate the Reauthorization.

## SUMMARY OF ARGUMENT

The Court should grant rehearing or rehearing *en banc* to reconsider its decision to vacate the Reauthorization. At the very least, the Court should clarify the scope of its Opinion.

The Court should grant the Petition because the Opinion fails to consider the extensive harm vacatur would cause, as this Court's precedent requires. Ignoring this fundamental requirement, the Opinion disposed of the "disruptive consequences" of vacatur in only 10 words, with no substantive analysis. Had the Court considered the harm, it could not have decided to vacate consistent with its own precedent. Apart from the harm to RGLNG itself, the massive disruption to everyone else who depends on the timely completion of the terminal, including the Offtakers, as well as the harm to the public interest, all make vacatur erroneous. The Court should grant the Petition to apply the appropriate standard, with a full consideration of harm.

Furthermore, while vacatur will cause significant harm under any circumstances, the Court should at a minimum clarify the scope of the Opinion. The Reauthorization is the only order before the Court, as the Natural Gas Act, this Court's rules, and this Court's precedent all demonstrate. FERC's original

4

Authorization[2] is not.  To eliminate the substantial confusion that has arisen, the

Court should clarify that the Opinion vacated only the Reauthorization, and thus the

Authorization remains in full effect.

## **ARGUMENT**

### I.    **THE COURT SHOULD GRANT REHEARING BECAUSE IT DID NOT ASSESS THE EXTRAORDINARY HARM THAT VACATUR WILL CAUSE, INCLUDING TO GLOBAL ENERGY MARKETS.**

The Court should grant the Petition because the Opinion fails to consider the

harm caused by vacatur, contrary to clear and binding precedent.  *See, e.g.*, *EME*

*Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 132 (D.C. Cir. 2015); *Allied-*

*Signal v. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993).  While

acknowledging that the Court would "typically assess the decision to vacate based

on *two factors*: 'the seriousness of the order's deficiencies . . . *and* the disruptive

consequences' of vacatur," Op. 33 (emphasis added), the Opinion makes only

cursory mention of the "disruptive consequences" of its decision.  Op. 34.  The

Opinion thus fails to consider not only the significant harm caused to RGLNG, but

also the substantial collateral harm that parties depending on the timely completion

of the terminal, including the Offtakers, will suffer.

---

[2]  *Order Granting Authorizations Under Sections 3 and 7 of the Natural Gas Act*,
169 FERC ¶ 61,131 (Nov. 22, 2019) ("Authorization").

To begin with, the procedural deficiencies identified in the Opinion—to the extent they are deficiencies—can and will be cured on remand. Op. 34. Where, as here, an agency can "readily cure a defect," precedent "counsels remand without vacatur." *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 197 (D.C. Cir. 2009). In ordering vacatur, the Court relied on inapposite precedent involving harm that could not easily be cured. Op. 34 (citing *EDF v. FERC*, 2 F.4th 953 (D.C. Cir. 2021)). This was wrong, because the defects in *EDF v. FERC* were substantive (involving FERC's reliance on a self-dealing contract to approve a pipeline) and likely could not be corrected. *EDF*, 2 F.4th at 973-77. That is not the type of defect at issue here. And even if it were, foregoing the harm analysis would still be error.

A fulsome analysis of the harm would make clear that vacatur is inappropriate. Courts should not vacate agency action where "[v]acatur could cause substantial disruption to the […] markets that have developed" in reliance on that action, *EME Homer*, 795 F.3d at 132, or where vacatur would cause disruption harmful to the public interest. *See, e.g.*, *North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008). Remand without vacatur is especially "appropriate when vacatur would disrupt settled transactions." *Am. Clean Power Ass'n v. FERC*, 54 F.4th 722 (D.C. Cir. 2022); *see also Sugar Cane Growers v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002) (remanding notwithstanding a severe violation because the agency already had disbursed sugar to farmers, who in turn had already plowed under their crops,

meaning "[t]he egg ha[d] been scrambled").  Here, RGLNG has begun construction and many parties, including the Offtakers, entered into multi-billion-dollar commitments and are relying on the terminal's timely completion to satisfy the world's energy needs.  Indeed, just months ago, another panel of this Court concluded that vacatur would have unduly disruptive consequences where that company had "executed a binding, 20-year contract for the supply" of 2 MTPA of LNG.  *Healthy Gulf v. FERC*, 107 F.4th 1033, 1047 (D.C. Cir. 2024).  Here too, reliance interests alone make vacatur improper.

This Court already decided in a prior proceeding involving this same project that vacatur was unjustifiable because it would "needlessly disrupt completion of the projects."  *See Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321, 1332 (D.C. Cir. 2021) ("*Vecinos I*").  Nothing in the intervening three years justifies a different outcome now.  Vacating the Reauthorization would cause cascading disruptions not only to RGLNG, but also to the Offtakers and the markets they have committed to serve, and it would prejudice the public interest.  For example, the Reauthorization approved changes to the size and configuration of the pipeline that will supply gas to the terminal.  *See, e.g.*, Reauthorization ¶ 13. Invalidating these design changes, which have nothing to do with the procedural issues identified in the Opinion, would delay construction and endanger the timely startup of the terminal.  Vacating the Reauthorization also would upend the

environmental improvements FERC required RGLNG to implement, including reductions in emissions. *See, e.g.*, Reauthorization ¶ 141.

More significantly, vacating the Authorization—which would halt construction—would cause catastrophic economic damage. The terminal is scheduled to begin exporting LNG in about three years. Halting construction now would likely make that impossible. Vacatur of a material permit could adversely impact RGLNG's ability to continue borrowing under its financing agreements, leading to the project's demise.[3] Vacatur and delay would have many less obvious consequences as well, including potential loss of key authorizations and permits.

Any delay would have extraordinary impacts on the Offtakers. The Offtakers' agreements with RGLNG have been in place for years. Relying on those agreements, many of the Offtakers made their own long-term commitments, including sales to customers (some of whom expressed preferences for supply from the U.S. due to its stability), capacity reservations on pipelines and at regasification terminals, and constructing or contracting for specialized ships. If RGLNG does not timely provide LNG, the Offtakers risk failing in their own commitments, and the customers relying on the Offtakers face natural gas shortages and energy price spikes.

---

[3] NextDecade Corp. Form 10-Q (Aug. 14, 2024) (noting that "bank credit facilities obtained by [RGLNG] to finance a substantial portion of Phase 1 costs require maintenance of material governmental approvals").

Replacing lost or delayed supply on such short notice is a nearly impossible task.  The global LNG market is largely illiquid.  Parties seeking to secure LNG supply generally execute long-term agreements years before the expected date of first delivery.  Losing 10.4 MTPA of contracted LNG supply only a few years before the anticipated date of first delivery thus would leave a gaping hole in the Offtakers' LNG supply commitments.  And *Amici* are just five of nine offtakers from the terminal's first three trains, who would collectively see 16.2 MTPA of supply jeopardized.  As a result, an untold number of worldwide customers would be forced to secure supply elsewhere—or to seek more carbon intensive substitutes such as oil and coal.

This loss of supply could in turn cause disruption across the markets the Offtakers serve, particularly Europe and Asia.  In Europe, utilities have limited access to long-term LNG supply, which already has been constrained by the war in Ukraine.  After its invasion, Russia cut 80 billion cubic meters of gas supplies to Europe, "plunging the region into an energy crisis."[4]  This supply loss significantly increased the importance of U.S.-sourced LNG, which will meet an estimated 40% of the deficit.  As the E.U. continues to phase out Russian imports, U.S. LNG,

---

[4] *Russia's War on Ukraine: Analyzing the Impacts of Russia's Invasion of Ukraine on Energy Markets and Energy Security*, INT'L ENERGY AGENCY, https://www.iea.org/topics/russias-war-on-ukraine (last visited Oct. 22, 2024).

including from the terminal, will be a critical replacement component.[5] Likewise in Asia, the loss of long-term supply would cause major disruption. For Asian countries to meet projected growth while lowering emissions, the stability of long-term supply, including from the Rio Grande terminal, is fundamental.

Vacatur is inappropriate where the disruption it causes would be "substantial." *EME Homer*, 795 F.3d at 132. The terminal is already under construction, and "there is no apparent way to restore the status quo ante." *Sugar Cane Growers*, 289 F.3d at 97. Here, the substantial disruption to RGLNG and the Offtakers, and the substantial harm to the public interest, all make vacatur inappropriate.

## II. THE COURT SHOULD CLARIFY THAT ITS OPINION APPLIES ONLY TO THE ORDER BEFORE IT: THE REAUTHORIZATION.

This Court also should clarify the scope of its Opinion. Ambiguities in the Opinion have caused substantial confusion and alarm. The Opinion has been described, including by Petitioners, as vacating the original Authorization and necessarily requiring construction on the terminal to halt.[6] But that cannot be right,

---

[5] *Additional US LNG projects are needed to contribute to Europe's Energy Security*, Eurogas (Sept. 30, 2024), https://www.eurogas.org/wp-content/uploads/2024/10/260924-FINAL-Eurogas-statement-Additional-US-LNG-projects-needed-to-contribute-to-Europes-Energy-Security.pdf.

[6] *D.C. Circuit Rules Against FERC Approval of LNG and Pipeline Projects in South Texas*, Sierra Club (Aug. 6, 2024), https://www.sierraclub.org/press-releases/2024/08/dc-circuit-rules-against-ferc-approval-lng-and-pipeline-projects-south-texas (stating that the Opinion "effectively cancels the previous approval of three harmful methane gas projects in South Texas by [FERC], marking the first time a court has vacated FERC approval of an LNG terminal.").

10

because the Court's jurisdiction extends only to the order before it, the Reauthorization.

Construction of the Rio Grande terminal was first allowed by the Authorization in 2019. Authorization ¶ 135. The Authorization was challenged in a prior proceeding, which the Court resolved by remanding without vacatur. *See Vecinos I*, 6 F.4th at 1331. After that remand, the Authorization was no longer before the Court. *See* D.C. Cir. R. 41(b).

In compliance with *Vecinos I*, FERC conducted additional analysis and issued the Reauthorization. Petitioners then sought review of the Reauthorization under the Natural Gas Act, which allows aggrieved parties to file a petition "praying that [an] order of [FERC] be modified or set aside in whole or in part" and grants the Court "jurisdiction . . . to affirm, modify, or set aside *such order* in whole or in part." 15 U.S.C. § 717r(b) (emphasis added). Because the Petition for Review challenges only the Reauthorization, *see* Docket No. 2007874 at 1, this Court has jurisdiction to review, and to vacate or remand, only the Reauthorization. 15 U.S.C. § 717r(b); *see also Am. Pub. Gas Ass'n v. DOE*, 72 F.4th 1324, 1335 (D.C. Cir. 2023) (upon review of a second petition after remand, analyzing only whether the agency "adequately explain[ed] its reasoning as required on remand").

Consistent with its jurisdiction, the Opinion only "vacate[d] both *reauthorizations*." Op. 34. Although *Amici* believe the Court should grant the

11

Petition to avoid the substantial harm that vacatur would inflict, it also is critical to suppliers, offtakers, investors, and the public that the scope of the Opinion be clear.

## CONCLUSION

For all these reasons, the Court should grant rehearing or rehearing *en banc* to reconsider the decision to vacate the Reauthorization and clarify that the Opinion applies only to the Reauthorization.

Date: October 28, 2024

Aaron M. Streett
Bill Kroger
Matthew P. Erickson
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1234
*Counsel for Exxon Mobil Corporation,*
*Galp Trading S.A., and Shell NA LNG*
*LLC*

Nicole A. Saharsky
Mark C. Williams
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000
*Counsel for ITOCHU Corporation*

Respectfully submitted,

/s/ *Stephen M. Nickelsburg*
Stephen M. Nickelsburg
Marcia Hook
Catrina Crittenden
CLIFFORD CHANCE US LLP
2001 K Street NW
Washington DC 20006
(202) 912-5000
*Counsel for TotalEnergies Gas &*
*Power North America, Inc.*

12

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following: This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b) because this brief contains 2,600 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and D.C. Circuit Rule 32(b), and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ *Stephen M. Nickelsburg*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this brief has been furnished to all counsel of record through the court's CM/ECF System on October 28, 2024.

<u>/s/ *Stephen M. Nickelsburg*</u>