**ORAL ARGUMENT HELD ON MAY 17, 2024**
**DECISION ISSUED ON AUGUST 6, 2024**

No. 23-1174 (consolidated with No. 23-1221)

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CITY OF PORT ISABEL, *et al.*,

*Petitioners,*

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent,*

RIO BRAVO PIPELINE COMPANY, LLC, and
RIO GRANDE LNG, LLC,

*Respondent-Intervenors.*

On Petitions for Review of Orders of the Federal Energy Regulatory Commission

**BRIEF OF *AMICUS CURIAE* INTERSTATE NATURAL GAS ASSOCIATION OF AMERICA, IN SUPPORT OF PETITIONS FOR PANEL REHEARING OR REHEARING EN BANC**

Joan Dreskin
Christopher Smith
INTERSTATE NATURAL GAS
ASSOCIATION OF AMERICA
25 Massachusetts Avenue, NW
Suite 500N
Washington, DC 20001
Phone: 202.216.5900
Email: jdreskin@ingaa.org
Email: csmith@ingaa.org

George P. Sibley, III
Deidre G. Duncan
Michelle-Ann C. Williams
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: 202.955.1500
Email: gsibley@HuntonAK.com
Email: dduncan@HuntonAK.com
Email: mawilliams@HuntonAK.com

*Counsel for Amicus Curiae Interstate
Natural Gas Association of America*

October 28, 2024

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), *amicus curiae* submits this certificate as to parties, rulings, and related cases.

### A.    PARTIES AND *AMICI*

All parties, intervenors, and *amici* appearing in this Court are listed in the Petitions for Panel Rehearing or Rehearing En Banc filed by Respondent-Intervenors Rio Bravo Pipeline Company, LLC and Rio Grande LNG, LLC in No. 23-1174 and Texas LNG Brownsville, LLC in No. 23-1175.

### B.    RULINGS UNDER REVIEW

The Petitioners in Nos. 23-1174 and 23-1175 seek review of four orders of the Federal Energy Regulatory Commission ("FERC"): *Rio Grande LNG, LLC*, 183 FERC ¶ 61,046 (April 21, 2023); *Rio Grande LNG, LLC*, 185 FERC ¶ 61,080 (October 27, 2023); *Texas LNG Brownsville, LLC*, 183 FERC ¶ 61,047 (Apr. 21, 2023), and *Texas LNG Brownsville, LLC*, 185 FERC ¶ 61,079 (Oct. 27, 2023).

### C.    RELATED CASES

The case on review is related to cases listed in FERC's Circuit Rule 28(a)(1) certificates filed in Nos. 23-1174 and 23-1175 .

Date: October 28, 2024                    Respectfully submitted,

                                          /s/ George P. Sibley, III

Joan Dreskin
Christopher Smith
INTERSTATE NATURAL GAS
    ASSOCIATION OF AMERICA
25 Massachusetts Avenue, NW
Suite 500N
Washington, DC 20001
Phone: 202.216.5900
Email: jdreskin@ingaa.org
Email: csmith@ingaa.org

George P. Sibley, III
Deidre G. Duncan
Michelle-Ann C. Williams
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: 202.955.1500
Email: gsibley@HuntonAK.com
Email: dduncan@HuntonAK.com
Email: mawilliams@HuntonAK.com

*Counsel for Interstate Natural Gas
Association of America*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29, and D.C. Circuit Rule 26.1, the Interstate Natural Gas Association of America (INGAA), states that it is an incorporated, not-for-profit trade association representing most interstate natural gas pipeline companies operating in the United States. INGAA has no parent corporation, and no publicly held company has a 10% or greater ownership interest in INGAA.

Date: October 28, 2024

Respectfully submitted,

/s/ George P. Sibley, III

Joan Dreskin
Christopher Smith
INTERSTATE NATURAL GAS
   ASSOCIATION OF AMERICA
25 Massachusetts Avenue, NW
Suite 500N
Washington, DC 20001
Phone: 202.216.5900
Email: jdreskin@ingaa.org
Email: csmith@ingaa.org

George P. Sibley, III
Deidre G. Duncan
Michelle-Ann C. Williams
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: 202.955.1500
Email: gsibley@HuntonAK.com
Email: dduncan@HuntonAK.com
Email: mawilliams@HuntonAK.com

*Counsel for Interstate Natural Gas
Association of America*

iii

## CERTIFICATE OF COUNSEL REGARDING SEPARATE BRIEFING[*]

Pursuant to D.C. Circuit Rule 29(d), counsel for amicus curiae certify that, to their knowledge, no other non-government amicus brief of which they are aware focuses on the precise topics addressed in this brief—namely, the broad harms to interstate natural gas transportation infrastructure development that would arise from the panel's reasoning and decision with respect to the trigger for a preparing a supplemental environmental impact statement (SEIS) and the test for assessing whether actions are connected and must be reviewed as one under the National Environmental Policy Act (NEPA).  As a leading trade organization intimately familiar with the midstream natural gas transportation sector and the importance of reliable and affordable natural gas, amicus is well-suited to provide the Court important context and a unique perspective on these subjects that will assist it in resolving this case. During the preparation of this brief, amicus endeavored to coordinate with Respondent-Intervenors and other prospective amici to avoid duplicative briefing.

 Date: October 28, 2024                    Respectfully submitted,

                                          /s/ George P. Sibley, III

---

[*] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), no counsel for any party authored this brief in whole or in part, and no party or counsel for a party contributed money intended to fund the preparation or submission of this brief.  No person other than *amicus curiae*, its members, or their counsel contributed money intended to fund the brief's preparation or submission.

Joan Dreskin
Christopher Smith
INTERSTATE NATURAL GAS
   ASSOCIATION OF AMERICA
25 Massachusetts Avenue, NW
Suite 500N
Washington, DC 20001
Phone: 202.216.5900
Email: jdreskin@ingaa.org
Email: csmith@ingaa.org

George P. Sibley, III
Deidre G. Duncan
Michelle-Ann C. Williams
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: 202.955.1500
Email: gsibley@HuntonAK.com
Email: dduncan@HuntonAK.com
Email: mawilliams@HuntonAK.com

*Counsel for Interstate Natural
Gas Association of America*

# TABLE OF CONTENTS

Page

Certificate as to Parties, Rulings, and Related Cases ...................................................i

Corporate Disclosure Statement ................................................................. iii

Certificate of Counsel Regarding Separate Briefing ................................................iv

Table of Authorities ................................................................. vii

Identity and Interest of *Amicus Curiae* .......................................................1

Introduction and Summary of Argument .................................................1

Argument...............................................................................................................4

    I.      The Panel Endorses a Trigger for Supplementing Environmental Impact Statements That Would Mire Large Projects in Perpetual NEPA Review. ....................................................................................................4

    II.     The Panel Adopts an Overbroad Test for Assessing Whether Actions Should Be Treated as Connected Under NEPA. ........................................7

Conclusion ................................................................. 12

Certificate of Compliance ................................................................. 13

Certificate of Service................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Boston Delegation v. FERC*,
  897 F.3d 241 (D.C. Cir. 2018)....................................................................7, 8, 9

*City of Port Isabel v. FERC*,
  111 F.4th 1198 (D.C. Cir. 2024)...................................................................5, 10

*Coal. on Sensible Transp., Inc. v. Dole*,
  826 F.2d 60 (D.C. Cir. 1987).........................................................................8, 9

*Delaware Riverkeeper Network v. FERC*,
  753 F.3d 1304 (D.C. Cir. 2014)....................................................................9, 10

*Friends of Cap. Crescent Trail v. Fed. Transit Admin.*,
  877 F.3d 1051 (D.C. Cir. 2017).........................................................................5

*Grand Canyon Trust v. FAA*,
  290 F.3d 339 (D.C. Cir. 2002)........................................................................5, 6

*Marsh v. Or. Nat. Res. Council*,
  490 U.S. 360 (1989).............................................................................4, 5, 6, 7

*Stand Up for California! v. U.S. Dep't of the Interior*,
  994 F.3d 616 (D.C. Cir. 2021)........................................................................5, 6

**Other Authorities**

40 C.F.R. § 1501.9(e) (2000) .................................................................................7

*Joint Comments of Electric Reliability Council of Texas, Inc.;
  Midcontinent Independent System Operator, Inc.; PJM
  Interconnection, L.L.C.; and Southwest Power Pool, Inc.*, Docket
  No. EPA-HQ-OAR-2023-0072 (Dec. 20,  2023) ..................................................2

*Natural Gas Intrastate Pipeline Capacity Additions Outpaced
  Interstate Additions in 2023* (Mar. 20, 2024),
  https://www.eia.gov/todayinenergy/detail.php?%20id=61623 ............................2

Sierra Club, https://www.sierraclub.org/beyond-dirty-fuels (last
    visited Oct. 22, 2024).................................................................................3

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

*Amicus curiae*, the Interstate Natural Gas Association of American (INGAA) is intimately familiar with, and directly interested in, the midstream natural gas sector and its importance to the nation's economy. INGAA represents and advocates on behalf of most interstate natural gas transmission pipeline companies in the United States. It thus has a significant interest in, and can offer a unique perspective on, the issues presented on the rehearing petitions filed by Respondent-Intervenors Rio Grande LNG, LLC, and Rio Bravo Pipeline Company, LLC in No. 23-1174 and Texas LNG Brownsville, LLC in No. 23-1175. INGAA urges the Court grant rehearing to address the issues Respondent-Intervenors have identified so the Court can avoid impeding clear, rational, predictable, and efficient environmental reviews under NEPA that support the ongoing development of reliable, affordable energy systems throughout the country.

## INTRODUCTION AND SUMMARY OF ARGUMENT

America's energy system is in peril. Critical energy infrastructure has become increasingly difficult to permit, site, and construct. Even as growth in the demand for energy rapidly expands, desperately-needed energy infrastructure—projects that would have been built as a matter of routine mere decades ago—is now being delayed, abandoned mid-development, or never proposed in the first place.

1

This infrastructure is critical. It includes the high voltage transmission lines necessary for electric reliability, the oil pipelines that supply fuel for transportation, the electric generators that produce power, the pipelines that supply fuel to electric generators and fuel and feedstock to the manufacturing industry, the local gas distribution networks that provide fuel to heat houses in the winter, the LNG terminals that provide needed energy to our allies overseas, all of which combine to provide millions of jobs and contribute trillions of dollars to our economy. Absent the development of this infrastructure, the country could face energy scarcity, rising prices, and reliability failures.

And yet the pace of energy infrastructure development has slowed down precipitously. *See* U.S. Energy Info. Admin. (EIA), *Natural Gas Intrastate Pipeline Capacity Additions Outpaced Interstate Additions in 2023* (Mar. 20, 2024), https://www.eia.gov/todayinenergy/detail.php?%20id=61623. This, at a time when the electric markets are sounding the alarm over impending reliability shortfalls. *See, e.g.*, *Joint Comments of Electric Reliability Council of Texas, Inc.; Midcontinent Independent System Operator, Inc.; PJM Interconnection, L.L.C.; and Southwest Power Pool, Inc*., Docket No. EPA-HQ-OAR-2023-0072, at 9 (Dec. 20, 2023), ("[S]hortfalls in resource adequacy . . . cannot simply be addressed overnight and would require the development of new resources that can take considerable time to permit and build.").

The weaponization of environmental reviews by those opposed to any build-out of energy infrastructure contributes to this slowdown.  Well-funded advocacy groups have made it their mission to challenge every environmental authorization for any project that facilitate the continued use of fossil fuels.  *See, e.g.,* https://www.sierraclub.org/beyond-dirty-fuels (last visited Oct. 22, 2024).  And these groups have exploited sometimes ambiguous or subjective legal standards to urge courts to halt these projects.  The result is a byzantine array of sometimes-conflicting judicial decisions that muddy the legal landscape for regulators and developers, causing delays, reducing regulatory certainty, increasing costs, and impeding development of desperately needed infrastructure.

The panel decision vacating the Federal Energy Regulatory Commission's (FERC)  reauthorization orders for the Rio Grande and Texas LNG Brownsville Projects injects yet more confusion into the NEPA process.  Respondent-Intervenors in Nos. 23-1174 and 23-1175 have outlined the reasons why in their Petitions for Panel Rehearing or Rehearing En Banc.  INGAA submits this brief to explain how two of those errors will frustrate comprehensive and efficient environmental reviews for INGAA members.

*First*, the panel decision appears to endorse a hair-trigger for preparation of supplemental environmental impact statements (SEIS).  Specifically, the Court's opinion (at 15) appears to endorse the idea that a federal agency must prepare an

SEIS every time it apprehends that new information indicates that significant impacts "might result" from the proposed action.  Taken to its extreme—and INGAA is confident that the opponents of its members' projects will urge courts do just that—this concept would seem to eliminate the steps agencies currently employ to evaluate new information to decide whether supplementation is necessary.

*Second*, the panel articulates a standard for assessing whether actions are "connected" and should be evaluated as a single project under NEPA that is overbroad and could have profound consequences for INGAA's members. Fortunately, that issue in this case has become moot, so the Court can simply eliminate that aspect of its decision.  When the time comes, the Court should more carefully tailor its legal standard to more precisely address how and when separate projects should be treated as connected.

## ARGUMENT

## I.   The Panel Endorses a Trigger for Supplementing Environmental Impact Statements That Would Mire Large Projects in Perpetual NEPA Review.

Under settled Supreme Court precedent, a federal agency need prepare an SEIS only when it obtains new information "sufficient to show that" the action "will 'affect[] the quality of the human environment' in a significant manner or to a significant extent not already considered." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 374 (1989).  Consistent with this precedent, this Court has required formal supplementation only where new information or analysis shows "significant" "new

environmental impacts." *Friends of Cap. Crescent Trail v. Fed. Transit Admin.*, 877 F.3d 1051, 1061 (D.C. Cir. 2017); *see also, e.g., Stand Up for California! v. U.S. Dep't of the Interior*, 994 F.3d 616, 628-29 (D.C. Cir. 2021).

The panel's decision departs from this precedent to the extent it implies an agency must supplement if it believes new information suggests that significant impacts "might result" from the action. Specifically, the panel announces that "NEPA requires an EIS if any significant impacts '*might* result' from the proposed action, not only when it definitively concludes that a significant impact *will* result.'" *City of Port Isabel v. FERC*, 111 F.4th 1198, 1209 (D.C. Cir. 2024) (quoting *Grand Canyon Trust v. FAA*, 290 F.3d 339, 340 (D.C. Cir. 2002)). The panel then says this same logic applies with respect to supplementation. The panel never actually explains what this means in practice or how this "might result" standard squares with the "will affect" threshold from *Marsh*. One potential reading of this—and the one that opponents of INGAA projects are certain to deploy in future cases—is that formal NEPA supplementation is the only procedural vehicle available to agencies to assess whether new information will result in significant impacts.

That is wrong for each of the reasons identified by Rio Grande and Texas LNG Brownsville. Rio Grande Reh'g Pet. § I.A-B; Texas LNG Reh'g Pet. § I. As Rio Bravo notes, federal agencies use a variety of different processes short of preparing an SEIS to assess whether new information trips the supplementation switch under

*Marsh*, and this Court has never suggested that these methods violate NEPA.  Rio Bravo Reh'g Pet. § II.1.

*Grand Canyon Trust*, the authority from which the panel grabs the "might result" language, does not remotely suggest that an agency's evaluation of new information to fully understand its significance must be made through an SEIS.  Nor does it even articulate a "might result" trigger for preparing an EIS in the first instance. *See* 290 F.3d at 340.  The case merely uses those words in explaining the NEPA process.  *Id.*  And even then, it acknowledges that federal agencies assess whether the activity will cause significant impacts to the environment *before* they prepare an EIS. *Id.* (discussing the use of Environmental Assessments to document findings of no significant impact).  This is incredibly thin authority on which to depart from the settled standard for supplementation this Court discussed and applied in *Friends of Capital Crescent Trail* and *Stand Up for California!*.  And any such departure cannot be squared with binding Supreme Court authority in *Marsh*.

The Court should grant rehearing to address this problem.  If the panel did not intend to set a "might result" threshold for supplementation or deprive agencies of the vehicles they have used to evaluate new information to determine whether supplementation is required, it should grant panel rehearing and revise this part of its opinion to make that clear.  If the Court did intend to adopt this new standard, the Court should grant rehearing en banc, because the decision conflicts with existing

D.C. Circuit authority and creates a split with other circuits. *See* Rio Grande Reh'g Pet. at 10.

Failing to correct this problem will acutely impact INGAA members. Interstate natural gas pipeline projects undergo multiple years of environmental review by a host of federal and State agencies. Given the diligence of those reviews, it is sometimes the case that some new bit of information will come to light in the time between publication of a final EIS and the completion of project construction. Until that new information is studied to some degree, some might argue, the agency cannot rule out the possibility that the activity "might result" in significant new environmental effects. If the only way to conduct that study is through preparation of an SEIS, which in INGAA member's experience frequently takes at least a year to complete, then environmental review for INGAA member projects would never conclude. It is imperative that the panel correct its opinion to clarify that this is not what it intended. And if it did intend to make preparation of an SEIS the exclusive vehicle for analyzing new information, the Court should grant rehearing en banc to address the patent conflict this creates with *Marsh* and precedent from this circuit and others.

## II. The Panel Adopts an Overbroad Test for Assessing Whether Actions Should Be Treated as Connected Under NEPA.

NEPA regulations require that "connected" actions be considered within a single environmental impact statement. 40 C.F.R. § 1501.9(e) (2000); *see City of Boston Delegation v. FERC*, 897 F.3d 241, 252-53 (D.C. Cir. 2018). The purpose

of this requirement is to prevent developers from shielding large projects with significant impacts from full NEPA review by artificially segmenting them into smaller projects. This Court historically has applied "a set of factors" that help clarify when "physically connected projects can be analyzed separately under NEPA." *City of Boston Delegation*, 897 F.3d at 252. Two of those factors, the Court has held, reliably indicate that projects are not connected and can be reviewed separately: (1) when the projects are not under review simultaneously; and (2) when the projects have "substantial independent utility" from each other.

But this Court's precedent has recognized that the absence of these conditions does not work reliably in reverse. While the absence of temporal nexus coupled with the presence of complete bidirectional independent utility may indicate a lack of connectedness, sometimes projects under review simultaneously are in fact separate actions, even though one may depend on the completion of the other. For that reason, in evaluating whether projects have substantial independent utility, this Court historically has considered much more than whether each project could proceed independently of the other. The Court has looked to "whether one project will serve a significant purpose even if a second related project is not built," *Coal. on Sensible Transp., Inc. v. Dole*, 826 F.2d 60, 69 (D.C. Cir. 1987), and it has studied "the commercial and financial viability of a project when considered in isolation

from other actions," *Delaware Riverkeeper Network v. FERC*, 753 F.3d 1304, 1313 (D.C. Cir. 2014).

This nuanced approach, which unquestionably governed in this Circuit before the panel's opinion, is particularly important in the context of linear infrastructure projects, such as highways, electric transmission lines, and oil and gas pipelines. These projects routinely proceed incrementally to serve a specific commercial or logistical purpose. As this Court previously observed in *Coalition for Sensible Transportation*, "it is inherent in the very concept of a highway network that each segment will facilitate movement in many others; if such mutual benefits compelled aggregation, no project could be said to enjoy independent utility. The proper question is whether one project will serve a significant purpose even if a second related project is not built." 826 F.2d at 69.

Natural gas pipelines are the same. INGAA members routinely seek federal authorizations for projects that would deliver gas from Point A to Point B to satisfy a specific commercial need at Point B in a timely manner, even though they readily anticipate a commercial demand is likely to emerge to support extending the pipeline from Point B to Point C. *See, e.g., City of Boston Delegation*, 897 F.3d at 251. What drives the decision to develop these segments independently is not avoiding NEPA analysis, but rather the realities of the commercial energy market. For that reason, even in cases where the Court has faulted a federal agency for impermissibly

9

segmenting a single project, it has looked not simply at "bidirectional independent utility," but also at the commercial realities of the projects. *See, e.g., Delaware Riverkeeper*, 753 F.3d at 1311 (holding that FERC impermissibly segmented four pipeline upgrade projects, not simply because the projects had a temporal nexus, but because they also were to "function together seamlessly" as part of a larger development plan).

But here, the panel strips the "substantial independent utility" analysis of any nuance. Under the panel's new simplistic test, "projects have substantial independent utility for purposes of the connected-action inquiry *only when* both projects are independently useful." *City of Port Isabel*, 111 F.4th at 1212. (emphasis added). Under that test, the B-to-C extension in the example above would lack "substantial independent utility" from original A-to-B project, because the B-to-C extension is not "independently useful" absent the completion of the A-to-B line. All that is necessary to make the actions "connected" under this Court's new test is for a developer to apply for the B-to-C extension while the A-to-B review is pending, even when that occurs for valid commercial reasons. And what's worse, the panel's decision, and others like it, will only make NEPA reviews more protracted and thus expand the opportunity for this new test to produce false positives.

Ultimately, the panel's new and vastly over-inclusive test for identifying "connected" projects will chill development of even highly beneficial projects

necessary to meet changing customer demand.  Pipeline developers will reasonably fear that proposing a second project while an earlier project remains under review will jeopardize timely approval and completion of the first project.  That might lead developers not to propose much-needed "second" projects at all, to the detriment of customers and end-users, and perhaps even the detriment of the environment (since some proposals will reduce emissions, such as upgrading older compression with lower-emitting newer equipment).  Such distortions serve no NEPA purpose.

As Rio Bravo explains, this new test departs from this Court's precedent and creates a split with other circuits.  Rio Bravo Reh'g Pet. § III.2.  Fortunately, the Court need not tackle this question here, because Rio Grande has withdrawn the carbon-capture proposal the Court concluded should be deemed "connected," and that makes the issue moot.  *Id.* §§ III.1, III.2.  Should the Court decline to vacate this part of its decision as moot, it should hew to its existing precedent, which appropriately accounts for the unique nature of linear infrastructure projects.[2]

---

[2] INGAA broadly agrees with Rio Grande, Rio Bravo, and Texas LNG, that rehearing should be granted to resolve the conflict the panel has created with this Court's *Allied-Signal* precedent and precedent from other circuits.

## CONCLUSION

The Petitions of Rio Grande, Rio Bravo, and Texas LNG Brownsville should

be granted.

Date: October 28, 2024                      Respectfully submitted,

                                            /s/ George P. Sibley, III
Joan Dreskin                                George P. Sibley, III
Christopher Smith                           Deidre G. Duncan
INTERSTATE NATURAL GAS                      Michelle-Ann C. Williams
   ASSOCIATION OF AMERICA    HUNTON ANDREWS KURTH LLP
25 Massachusetts Avenue, NW                 2200 Pennsylvania Avenue, NW
Suite 500N                                  Washington, DC 20037
Washington, DC 20001                        Phone: 202.955.1500
Phone: 202.216.5900                         Email: gsibley@HuntonAK.com
Email: jdreskin@ingaa.org                   Email: dduncan@HuntonAK.com
Email: csmith@ingaa.org                     Email: mawilliams@HuntonAK.com

                                            *Counsel for Interstate Natural*
                                            *Gas Association of America*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because this brief contains 2,526 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), as determined by the word-counting feature of Microsoft Word.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

Date: October 28, 2024                          Respectfully submitted,

                                                /s/ George P. Sibley, III
                                                George P. Sibley, III
                                                Deidre G. Duncan
                                                Michelle-Ann C. Williams
                                                HUNTON ANDREWS KURTH LLP
                                                2200 Pennsylvania Avenue, NW
                                                Washington, DC 20037
                                                Phone: 202.955.1500
                                                Email: gsibley@HuntonAK.com
                                                Email: dduncan@HuntonAK.com
                                                Email: mawilliams@HuntonAK.com

                                                *Counsel for Interstate Natural Gas Association of America*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25, I hereby certify that, on October 28, 2024, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, and served copies of the foregoing via the Court's CM/ECF system on all ECF-registered counsel.

Date: October 28, 2024

Respectfully submitted,

/s/ George P. Sibley, III
George P. Sibley, III
Deidre G. Duncan
Michelle-Ann C. Williams
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Phone: 202.955.1500
Email: gsibley@HuntonAK.com
Email: dduncan@HuntonAK.com
Email: mawilliams@HuntonAK.com

*Counsel for* Amicus Curiae