## N THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| CITY OF PORT ISABEL, et.al., | |
| *Petitioners*, | |
| v. | |
| FEDERAL ENERGY REGULATORY COMMISSION, | Nos. 23-1174(L), 23-1175 (consolidated) |
| *Respondent*, | |
| and | |
| RIO BRAVO PIPELINE COMPANY, LLC, and RIO GRANDE LNG, LLC | |
| *Respondent-Intervenors*. | |

On Petitions for Review of Orders of the Federal Energy Regulatory Commission

### *AMICUS CURIAE* BRIEF OF THE LIPAN APACHE TRIBE OF TEXAS IN SUPPORT OF INTERVENOR RIO GRANDE LNG, LLC'S PETITION FOR REHEARING OR REHEARING EN BANC

Jarod R. Stewart
Brent M. Hanson
Steptoe LLP
717 Texas Ave. Ste. 2800
Houston, TX 77002
(713) 221-2300
jstewart@steptoe.com
bhanson@steptoe.com

*Counsel for the Lipan Apache Tribe of Texas*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), *amicus curiae* submits this certificate as to parties, rulings, and related cases.

1) **Parties and *Amici***.  The parties who have appeared before the Court are listed in Petitioners' Circuit Rule 28(a)(1) certificate and also include the Lipan Apache Tribe of Texas and Brownsville Navigation District of Cameron County, Texas as movants to file briefs as *amici curiae*.

2) **Rulings Under Review**.  The Petitioners seek review of two orders of the Federal Energy Regulatory Commission; Rio Grande LNG, LLC, 183 FERC ¶ 61,046 (April 21, 2023), R. 3011, JA1-176; and Rio Grande LNG, LLC, 185 FERC ¶ 61,080 (October 27, 2023), R. 3080, JA177-238.

3) **Related Cases**.  Pursuant to Circuit Rule 28(a)(1)(C), the undersigned states that some of the issues raised in this case are similar to the issues raised in the following case: *City of Port Isabel, et al. v. FERC*, D.C. Circuit Case Nos. 23-1175 (L) and 23-1222 (concerning Texas LNG Brownsville LLC FERC Dkt. CP16-116).  On November 15, 2023, the Court Clerk granted FERC's motion to calendar that case and this one before the same panel.  (ECF No. 2027253).

Dated: October 28, 2024

Respectfully submitted,

*/s/ Brent M. Hanson*

Brent M. Hanson
Steptoe LLP
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Telephone: (713) 221-2300
Facsimile: (713) 221-2320
bhanson@steptoe.com

*Counsel for the Lipan Apache Tribe of Texas*

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* states that it is not a corporation and therefore has no corporate

ownership to disclose.

Dated: October 28, 2024                    Respectfully submitted,

*/s/ Brent M. Hanson*
Brent M. Hanson
Steptoe LLP
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Telephone: (713) 221-2300
Facsimile: (713) 221-2320
bhanson@steptoe.com

*Counsel for the Lipan Apache Tribe of Texas*

## STATEMENT OF COUNSEL

Pursuant to Federal Rule of Appellate Procedure 29 and Circuit Rule 29, *amicus curiae* certifies that a separate brief is necessary to provide the perspective of this environmental justice community, which is not represented by any of the parties to this case. *Amicus curiae* further states that no counsel for a party authored this brief in whole or in part, and no person other than *amicus curiae*, its members, or its counsel contributed money that was intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

Dated: October 28, 2024

Respectfully submitted,

*/s/ Brent M. Hanson*
Brent M. Hanson
Steptoe LLP
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Telephone: (713) 221-2300
Facsimile: (713) 221-2320
bhanson@steptoe.com

*Counsel for the Lipan Apache Tribe of Texas*

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ....... i

CORPORATE DISCLOSURE STATEMENT ................................................. iii

STATEMENT OF COUNSEL ....................................................................... iv

IDENTITY AND INTEREST OF *AMICUS CURIAE* .....................................1

INTRODUCTION ...........................................................................................2

ARGUMENT ..................................................................................................4

I.    The environmental justice communities surrounding the Rio Grande project include minorities, such as the Lipan Apache Tribe, as well as substantial low-income populations. ..................................................................5

II.   The "disruptive consequences" of vacating the Commission's reauthorizations are severe and will negatively impact environmental justice communities, including the Lipan Apache Tribe. ..........................................8

CONCLUSION ............................................................................................12

CERTIFICATE OF COMPLIANCE ..............................................................13

CERTIFICATE OF SERVICE .......................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied-Signal. Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
   988 F.2d 146 (D.C. Cir. 1993)...................................................................4, 9, 12

*City of Port Isabel v. FERC*,
   111 F.4th 1198 (D.C. Cir. 2024).................................................................3, 4, 9

*Rio Grande LNG, LLC*,
   183 FERC 61046 (2023)..............................................................................*passim*

*Sugar Cane Growers Co-op. of Florida v. Veneman*,
   289 F.3d 89 (D.C. Cir. 2022)............................................................................12

*Vecinos para el Bienestar de la Comunidad Costera v. FERC*,
   6 F.4th 1321 (D.C. Cir. 2021)............................................................................2

**Other Authorities**

4 Sir Francis Bacon, *Of Seditions and Troubles in* THE PAMPHLET
   COLLECTION OF SIR ROBERT STOUT, 12 (K.A. Coleridge ed., 1987)...................2

Bernard F. Barcena Jr., *Court Ruling That Stalls LNG Project Hurts
   the Rio Grande Valley Community,* SAN ANTONIO EXPRESS NEWS
   (Sept. 19, 2024),
   *https://www.expressnews.com/opinion/commentary/article/rio-
   grande-lng-19769441.php* .................................................................................11

Brownsville City, Texas, United States Census Bureau,
   *https://data.census.gov/profile/Brownsville_city,_Texas?g=160XX
   00US4810768*, (last visited Sept. 18, 2024) ........................................................8

Council on Environmental Quality, *Environmental Justice, Guidance
   Under National Environmental Policy Act*, (Dec. 10, 1997) (CEQ
   1997 Environmental Justice Guidance),
   *https://www.epa.gov/environmentaljustice/ceq-environmental-
   justice-guidance-under-national-environmental-policy-act*................................6

vi

Edinburg City, Texas, United States Census Bureau,
    https://data.census.gov/profile/Edinburg_city,_Texas?g=160XX00
    US4822660 (last visited Sept. 18, 2024) ............................................................8

*Our Sacred History: Who We Are*, Official Website of the Lipan
    Apache Tribe, *https://www.lipanapache.org/AboutUs.html* (last
    visited Oct. 10, 2024)........................................................................................1, 7

Intervenor Rio Grande LNG, LLC's Pet. for Reh'g or Reh'g En Banc,
    ECF No. 2081045 ..............................................................................................9

Joint Answering Br. for Resp'ts-Intervenors, ECF No. 2045502 ..........................11

Sammy Cervantes, EveryTexan.org, 2022 ACS 1-Year Estimates
    Poverty and Income in Texas (2022), https://everytexan.org/wp-
    content/uploads/2023/12/Income-Poverty-Data-Brief-2023.pdf........................8

Testimonials, RGLNG, https://www.standwithrglng.com/testimonials/
    (last visited on Oct. 10, 2024)........................................................................10, 11

Official Website of the Lipan Apache Tribe, The Lipan Apache Tribe,
    *Frequently Asked Questions*,
    https://www.lipanapache.org/LAT/faqs.html (last visited Oct. 10,
    2024) .................................................................................................................7

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Lipan Apache Tribe is a

> sovereign Native American Tribe in the state of Texas . . . tasked with promoting the general welfare and justice for the Lipan Apache people; acquiring resources for the benefit of its people; protecting the Tribe's Native American heritage . . . ; preserving, securing, and exercising all the inherent sovereign rights and powers of a Native American tribe; and continuing relations with the United States of America and the State of Texas.

*Our Sacred History: Who We Are*, Official Website of the Lipan Apache Tribe, *https://www.lipanapache.org/AboutUs.html* (last visited Oct. 10, 2024). In accordance with its mission to promote the general welfare and justice for the Lipan Apache people, the Lipan Apache Tribe believes that the Rio Grande LNG, LLC ("Rio Grande LNG") liquified natural gas project and Rio Bravo Pipeline Company, LLC pipeline project (collectively, "Rio Grande") will provide significant economic benefits and opportunities to the Tribe's nearly 1,000 members in the Rio Grande Valley. The Tribe further believes that Rio Grande is committed to preserve and protect the environment and wildlife, and that Rio Grande's plans, as approved by the Federal Energy Regulatory Commission (the "Commission"), will adequately protect and steward the earth's resources. The Lipan Apache Tribe recognizes the genuine efforts and meaningful engagement by Rio Grande with the Tribe, and the Tribe believes that the project will provide meaningful employment opportunities and uplift the community.

The Lipan Apache Tribe's governing body has authorized it to file this *amicus* brief.

## INTRODUCTION

When the Court vacated Rio Grande's authorization, the Court granted a "remedy . . . worse than the disease." 4 Sir Francis Bacon, *Of Seditions and Troubles in* THE PAMPHLET COLLECTION OF SIR ROBERT STOUT, 12 (K.A. Coleridge ed., 1987). Over eight years ago, Rio Grande LNG applied to the Commission to construct an LNG export terminal. *See Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321, 1326 (D.C. Cir. 2021). After years of submissions and the Commission's initial authorization, this Court decided in 2021 that the Commission was required to address, among other items, the radius of its environmental justice analysis. *Id.* at 1329-32. On remand, the Commission conducted an expanded environmental justice analysis, received and addressed public comments, and issued a decision reauthorizing the project that spanned 165 pages inclusive of supporting documentation. *Rio Grande LNG, LLC*, 183 FERC 61046 (2023). During this process, Rio Grande engaged with local stakeholders to ameliorate any environmental impacts, including the Lipan Apache Tribe.

On remand, the Commission expanded the radius of its environmental justice analysis to 50 kilometers from the LNG project site and concluded that the project was still not inconsistent with the public interest. *See Rio Grande*, 183 FERC at

61300.  The only "significant" impact on environmental justice communities was a visual impact from the project site.  *Id.*  In contrast to that single "significant" impact, the project is expected to generate thousands of jobs and billions of dollars in investment in one of the poorest communities in the United States.  This community is also comprised of significant minority populations, including members of the Lipan Apache Tribe, who are themselves one of the environmental justice communities.

Despite the Commission's extensive analysis and the significant economic benefits to the Rio Grande Valley, the Court concluded in this appeal that the Commission's failure to issue a supplemental Environmental Impact Statement was fatal to the project and vacated the Commission's order.  *City of Port Isabel v. FERC*, 111 F.4th 1198, 1206-11, 1218-19 (D.C. Cir. 2024).  As a result, all of those benefits to the environmental justice communities (including the Lipan Apache Tribe) derived from the already-underway construction of the Rio Grande project have been stripped away.  The irony here is two-fold: first, the Court's conclusion that the Commission failed to properly engage in an environmental justice analysis harms the very communities it was designed to protect, and second, the single significant "visual impact" harm has already started because construction is underway.  Thus, the environmental justice communities, including the Lipan Apache Tribe, are experiencing only a negative impact post-vacatur without any of the many positive

benefits created by and flowing from the project, which are now unfortunately uncertain. The Court did not address the significant disruptive consequences of vacatur as it was required to do under *Allied-Signal*. *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). The Lipan Apache Tribe therefore respectfully requests that the Court grant rehearing en banc to correct this error of law and reason.

## ARGUMENT

The Court erred when it failed to duly consider the disruptive consequences of vacating the Commission's reauthorizations. Under binding precedent in this circuit, "[t]he decision whether to vacate depends on 'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed.'" *Allied-Signal, Inc.*, 988 F.2d at 150–51 (quoting *Int'l Union, UMW v. FMSHA*, 920 F.2d 960, 967 (D.C. Cir. 1993)). Here, although the Court believed it was protecting environmental justice communities by vacating the reauthorizations and ordering the Commission to issue a supplemental EIS, *City of Port Isabel*, 111 F.4th at 1206-11, the Court's order will actually <u>harm</u> the environmental justice community the regulations purport to protect.

I.     **The environmental justice communities surrounding the Rio Grande project include minorities, such as the Lipan Apache Tribe, as well as substantial low-income populations.**

The Commission, as well as the Court, accurately assessed that there is a significant environmental justice population within 50 kilometers of the project site. But as explained below, the presence of economically disadvantaged and minority populations should have compelled the Court to remand <u>without</u> vacating the Commission's order.

"In conducting NEPA reviews of proposed natural gas projects, the Commission follows Executive Order 12898, which directs federal agencies to identify and address 'disproportionately high and adverse human health or environmental effects' of their actions on minority and low-income populations." *Rio Grande*, 183 FERC at 61280. "Consistent with CEQ and EPA guidance and recommendations, the Commission's methodology for assessing environmental justice impacts considers: (1) whether environmental justice communities (e.g., minority or low-income populations) exist in the project area; (2) whether impacts on environmental justice communities are disproportionately high and adverse; and (3) possible mitigation measures." *Id.* at 61281.

Under Council on Environmental Quality ("CEQ") guidance for agencies, low-income populations are identified with the "annual statistical poverty thresholds from the Bureau of the Census Current Population Reports, Series P-60 on Income

and Poverty."  Council on Environmental Quality, *Environmental Justice, Guidance Under National Environmental Policy Act*, 25 (Dec. 10, 1997) (CEQ 1997 Environmental Justice Guidance), available at https://www.epa.gov/environmentaljustice/ceq-environmental-justice-guidance-under-national-environmental-policy-act.  "In identifying low-income populations, agencies may consider as a community either a group of individuals living in geographic proximity to one another, or a set of individuals (such as migrant workers or Native Americans), where either type of group experiences common conditions of environmental exposure or effect." *Id.*  A "minority" includes "American Indian or Alaskan Native; Asian or Pacific Islander; Black, not of Hispanic origin, or Hispanic." *Id.*  "Minority populations should be identified where either: (a) the minority population of the affected area exceeds 50 percent or (b) the minority population percentage of the affected area is meaningfully greater than the minority population percentage in the general population or other appropriate unit of geological analysis." *Id.*  In the instant case, the Commission identified 286 environmental justice community block groups within a 50-kilometer radius of the LNG facility site, with 131 having a minority population that either exceeds 50% or is meaningfully greater than their respective counties, two with a low-income population that is equal to or greater than their respective counties, and 153

6

communities with both a minority population and a low-income population that exceed the respective thresholds. *Rio Grande*, 183 FERC at 61283-84.

The Lipan Apache Tribe of Texas precisely fits within the contours of the environmental justice community. First, members of the Lipan Apache Tribe live within the 50-kilometer range of the Rio Grande project. The Lipan Apache Tribe is headquartered in McAllen, Texas and has about 4,500 members, making it one of the largest indigenous tribes in Texas. Official Website of the Lipan Apache Tribe, *Our Sacred History: Who We Are*, https://www.lipanapache.org/LAT/aboutus.html (last visited Oct. 10, 2024). Approximately one fourth of the Lipan Apache Tribe members live within the Rio Grande Valley, and 364 of its members live within cities that are within the 50-kilometer environmental justice region.

Second, the Lipan Apache Tribe is "American Indian." To be a member of the Lipan Apache Tribe, a person must establish that they descended from the Lipan Apache Tribe, and therefore are Native American. *See* Official Website of the Lipan Apache Tribe, The Lipan Apache Tribe, *Frequently Asked Questions*, https://www.lipanapache.org/LAT/faqs.html (last visited Oct. 10, 2024).

Third, the Lipan Apache Tribe is unfortunately predominantly composed of "low-income" persons as defined in the environmental justice analysis. Accordingly, the Lipan Apache Tribe speaks for both minorities and low-income populations under the environmental justice analysis.

In addition to the Tribe's struggles with poverty, the geographic area surrounding the Rio Grande LNG project is one of the poorest in the United States. The McAllen-Edinburg-Mission area of Texas, which is well within the zone of potential economic benefits, is one of the top five poorest metropolitan areas in the United States, with a poverty rate of 27.6%. Sammy Cervantes, EveryTexan.org, 2022 ACS 1-Year Estimates Poverty and Income in Texas, (202), https://everytexan.org/wp-content/uploads/2023/12/Income-Poverty-Data-Brief-2023.pdf. Brownsville, which is predominantly within 50 kilometers of the project, has a 22.7 percent poverty rate. Brownsville City, Texas, United States Census Bureau, *https://data.census.gov/profile/Brownsville_city,_Texas?g=160XX00US4810768*, (last visited Sept. 18, 2024). And Edinburg, which is within the zone of projected economic benefits of the Rio Grande project, has a 23.1 % poverty rate. Edinburg City, Texas, United States Census Bureau, *https://data.census.gov/profile/Edinburg_city,_Texas?g=160XX00US4822660,* (last visited Sept. 18, 2024).

## II.    The "disruptive consequences" of vacating the Commission's reauthorizations are severe and will negatively impact environmental justice communities, including the Lipan Apache Tribe.

The Court did not consider the significant economic disruptions to the environmental justice community when it vacated the reauthorizations. The Court is required to consider under the *Allied-Signal* test the "disruptive consequences" of

vacating the reauthorization order. 988 F.2d at 150–51. Instead of conducting the analysis, the Court devoted one sentence stating that the Court "appreciate[d] the significant disruption vacatur m[ight] cause the projects." *City of Port Isabel*, 111 F.4th at 1218. But the disruptions extend beyond just the projects.

The Rio Grande project will create thousands of well-paying jobs and deliver billions of dollars in commerce to uplift economically disadvantaged communities in the Rio Grande Valley and the Lipan Apache Tribe. Construction of the project is projected to require a monthly average of 2,950 workers, with a peak of 5,225 workers, over a seven-year period. *Rio Grande*, 183 FERC at 61285-86. Most of these workers will be local. *Id.* Prior to the Court's vacatur, Rio Grande LNG had already hired and employed approximately 1,700 workers with the vast majority from the local area. *See* Intervenor Rio Grande LNG, LLC's Pet. for Reh'g or Reh'g En Banc, 4, ECF No. 2081045. Of the 155 vendors supplying goods and services to the project, 93 are local, further stimulating the Rio Grande Valley economy. *Id.* The project is also estimated to provide $136.9 million in tax revenue to Cameron County, funding education, infrastructure, and drainage improvements for the entire local community, including Lipan Apache Tribe members.

And the benefits are not solely economic. Rio Grande has committed to mitigate any impact on wetlands or animal habitats. *See Rio Grande*, 183 FERC at 61284-85. Rio Grande has allocated funds to the conservation of over 4,000 acres

9

of land, including the preservation of Los Lomas and vital local wetlands. *See* Testimonials, RGLNG, https://www.standwithrglng.com/testimonials/ (last visited on Oct. 10, 2024). Rio Grande has also committed to fortifying the Brownsville Ship Channel, stabilizing embankments. *See Rio Grande*, 183 FERC at 61287. These measures are significant and carry great weight with the Lipan Apache Tribe.

Further, from the Tribe's perspective, Rio Grande has been attentive and engaged, consulting with the Tribe on cultural resources and concerns to mitigate any potential environmental harm, while also providing significant opportunities to Lipan Apache Tribe-members. In March 2015, Rio Grande contacted Chairman Barcena of the Lipan Apache Tribe to explain Rio Grande's plan and asked for assistance in identifying cultural resources or sacred sites. Chairman Barcena has stated the Tribe "recognizes the genuine engagement and meaningful collaboration demonstrated by the Rio Grande LNG team toward our tribe." Bernard F. Barcena Jr., *Court Ruling That Stalls LNG Project Hurts the Rio Grande Valley Community*, SAN ANTONIO EXPRESS NEWS, (Sept. 19, 2024), https://www.expressnews.com/opinion/commentary/article/rio-grande-lng-19769441.php.

Rio Grande likewise contacted Dr. Robert Soto, Vice Chairman of the Lipan Apache Tribe. Dr. Soto toured the Rio Grande LNG construction site and discussed the project with key stakeholders, concluding that Rio Grande would provide his

Tribe and the community with significant economic opportunities and that Rio Grande went to great lengths to steward the earth and wildlife. All of these carefully achieved benefits will be significantly disrupted by the Court's vacatur.

The disruptions to the projects are also significant; Rio Grande has already invested billions of dollars in reliance on the Commission's authorizations. *See* Joint Answering Br. for Resp'ts-Intervenors, 39-40, ECF No. 2045502. Work has already begun, starting in July 2023, and over 1,700 workers are employed on site. *See* Testimonials, RGLNG, https://www.standwithrglng.com/testimonials/ (last visited on Oct. 10, 2024). Stopping this project over a year into construction would result in a significant blow to the local economy, harming the very community that the environmental justice considerations are supposed to protect. Furthermore, vacating the decision puts Rio Grande's financing and long-term agreements at risk, jeopardizing the entire project and thereby stripping the Rio Grande Valley and the Lipan Apache Tribe of a vital driver of economic growth.

This degree of disruption more than meets the *Allied-Signal* standard. In *Sugar Cane Growers Co-op. of Florida v. Veneman*, 289 F.3d 89, 97-98 (D.C. Cir. 2022), the Court held that even though the Department of Agriculture violated the APA by completely omitting notice and comment, there would be significant disruption because farmers had already plowed-under their fields in response to the Department's action. Accordingly, the "egg ha[d] been scrambled and there [wa]s

11

no apparent way to restore the status quo ante." *Id.* at 97. Similarly here, construction has begun, investments have been made, and there is no way to unscramble the egg. Vacating the Commission's reauthorizations will cause substantial disruption, eliminate significant economic benefits, and harm the very communities that a supplemental EIS intends to protect. Furthermore, given the scope of the Commission's 165 pages of analysis and supporting materials and the minimal negative impacts on the environmental justice community, there is little "doubt whether the agency chose correctly." *Allied-Signal, Inc.*, 988 F.2d at 150-51.

## CONCLUSION

Rio Grande's petition should be granted.

Dated: October 28, 2024                              Respectfully submitted,

                                                     */s/ Brent M. Hanson*
                                                     Jarod R. Stewart
                                                     Brent M. Hanson
                                                     Steptoe LLP
                                                     717 Texas Avenue, Suite 2800
                                                     Houston, Texas 77002
                                                     Telephone: (713) 221-2300
                                                     Facsimile: (713) 221-2320
                                                     jstewart@steptoe.com
                                                     bhanson@steptoe.com

                                                     *Counsel for the Lipan Apache Tribe*
                                                     *of Texas*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume requirements of Federal Rule of Appellate Procedure 29(b)(4) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1), this document contains 2,581 words; and

2.      This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14pt Times New Roman font.

Dated: October 28, 2024                          Respectfully submitted,

*/s/ Brent M. Hanson*
Brent M. Hanson
Steptoe LLP
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Telephone: (713) 221-2300
Facsimile: (713) 221-2320
bhanson@steptoe.com

*Counsel for the Lipan Apache Tribe
of Texas*

13

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25, I, Brent M. Hanson, hereby certify that on October 28, 2024, I caused a true and correct copy of a copy of the foregoing document to be served on all parties of record via the CM/ECF system for the District of Columbia Circuit.

Dated: October 28, 2024                    Respectfully submitted,

*/s/ Brent M. Hanson*
Brent M. Hanson
Steptoe LLP
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Telephone: (713) 221-2300
Facsimile: (713) 221-2320
bhanson@steptoe.com

*Counsel for the Lipan Apache Tribe of Texas*

14