ORAL ARGUMENT HELD ON MAY 17, 2024

Nos. 23-1174 (L), 23-1221

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**CITY OF PORT ISABEL, ET AL.,**

*Petitioners,*

**v.**

**FEDERAL ENERGY REGULATORY COMMISSION,**

*Respondent,*

**RIO BRAVO PIPELINE COMPANY, LLC AND RIO GRANDE
LNG, LLC,**

*Intervenors for Respondent.*

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

**BRIEF OF *AMICI CURIAE* U.S. SENATOR TED CRUZ,
REPRESENTATIVE DAN CRENSHAW, AND BIPARTISAN
COALITION OF 13 OTHER MEMBERS OF CONGRESS IN
SUPPORT OF RESPONDENT-INTERVENORS' PETITIONS FOR
PANEL REHEARING OR REHEARING *EN BANC***

Ivan L. London
  *Counsel of Record*
MOUNTAIN STATES LEGAL
  FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
ilondon@mslegal.org
*Counsel for Amici Curiae*

R. Trent McCotter
Michael Buschbacher
Andrew W. Smith
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

## DISCLOSURE STATEMENT

Per Fed. R. App. P. 26.1 and 29(a), and D.C. Circuit Rule 26.1, *Amici* state that they are not corporations, and no further Rule 26.1 disclosure statement is required.

## <u>TABLE OF CONTENTS</u>

DISCLOSURE STATEMENT.................................................................i

TABLE OF CONTENTS .................................................................ii

TABLE OF AUTHORITIES ............................................................iii

IDENTITIES AND INTERESTS OF *AMICI CURIAE*............................1

SUMMARY OF ARGUMENT ....................................................3

ARGUMENT ......................................................................4

I.  Congress Codifies the Public Interest ............................................4

II.  Congress Has Made Clear That Building LNG Facilities Is Strongly in the Public Interest ........................................5

III.  NEPA Demands Processes, Not Outcomes ....................................6

IV.  The Panel Mistakenly Put Other Interests over the Public Interest................................................................7

V.  Vacatur Was the Wrong Remedy.......................................8

VI.  *En Banc* Review Is Warranted .......................................13

CONCLUSION ...............................................................14

# TABLE OF AUTHORITIES

**Case**                                                 **Page(s)**

*Allied-Signal v. NRC,*
    988 F.2d 146 (D.C. Cir. 1993) .................................................... 10

*Checkosky v. SEC,*
    23 F.3d 452 (D.C. Cir. 1994) ...................................................... 12

*Citizens Against Burlington, Inc. v. Busey,*
    938 F.2d 190 (D.C. Cir. 1991) .................................................... 11

*City of Oberlin, Ohio v. FERC,*
    39 F.4th 719 (D.C. Cir. 2022) ...................................................... 6

*Corner Post v. Bd. of Governors of Fed. Reserv. Sys.,*
    144 S. Ct. 2440 (2024) .......................................................... 4, 13

*Ctr. for Biological Diversity v. FERC,*
    67 F.4th 1176 (D.C. Cir. 2023) .................................................... 5

*Healthy Gulf v. FERC,*
    107 F.4th 1033 (D.C. Cir. 2024) ............................................... 11

*Loving v. United States,*
    517 U.S. 748 (1996) .................................................................. 4

*NAACP v. Fed. Power Comm'n,*
    425 U.S. 662 (1976) .................................................................. 6

*Oglala Sioux Tribe v. NRC,*
    896 F.3d 520 (D.C. Cir. 2018) .................................................... 11

*Robertson v. Methow Valley Citizens Council,*
    490 U.S. 332 (1989) ............................................................... 7, 12

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
    591 U.S. 197 (2020) .................................................................. 4

*Sierra Club v. Morton,*
   405 U.S. 727, 734 (1972) ........................................... 12

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs,*
   985 F.3d 1032 (D.C. Cir. 2021) ................................. 11

*Trump v. United States,*
   144 S. Ct. 2312 (2024) .............................................. 4, 13

*Vecinos para el Bienestar de la Comunidad Costera v. FERC,*
   6 F.4th 1321 (D.C. Cir. 2021) .................................. 8, 9, 10

*Youngstown Sheet & Tube Co. v. Sawyer,*
   343 U.S. 579 (1952) ................................................. 5

**Constitutional Provisions and Statutes**

U.S. Const. art. I, § 1 ................................................. 4

5 U.S.C. § 706 ........................................................... 13

15 U.S.C. § 717b(a) .................................................. 5, 6, 14

15 U.S.C. § 717b(c) .................................................. 6

15 U.S.C. § 717b(e) .................................................. 6

15 U.S.C. § 717r(b) .................................................. 12, 13

15 U.S.C. § 717r(d)(3) .............................................. 13

42 U.S.C. § 4331(a) .................................................. 7

42 U.S.C. § 4332(2)(C) .............................................. 7

**Rules**

D.C. Cir. R. 26.1 ...................................................... i

D.C. Cir. R. 28(a)(1) ................................................. 16

D.C. Cir. R. 29(d) .................................................... 18

D.C. Cir. R. 35 ................................................................... 16

Fed. R. App. P. 26.1 .......................................................... i

Fed. R. App. P. 29(a)(4) .................................................. 17

Fed. R. App. P. 32(a)(5) .................................................. 17

Fed. R. App. P. 32(a)(6) .................................................. 17

Fed. R. App. P. 32(f) ....................................................... 17

Fed. R. App. P. 35(a)(1) .................................................. 13

Fed. R. App. P 35(a)(2) ................................................... 14

## IDENTITIES AND INTERESTS OF *AMICI CURIAE*[1]

*Amici curiae* are U.S. Senator Ted Cruz, Representative Dan Crenshaw, and a bipartisan coalition of 13 other members of Congress. The full list of *Amici* appears below.

Among his several assignments, Senator Cruz is Ranking Member on the U.S. Senate's Committee on Commerce, Science, & Transportation and the Judiciary Committee's Subcommittee on the Constitution. Representative Crenshaw is on the House Energy and Commerce Committee.

As members of Congress, *Amici* have a strong interest in ensuring that federal courts correctly interpret and apply the Natural Gas Act. Congress passed the Act to encourage the development of natural gas resources and infrastructure, considering such development to be in the public interest. Congress accordingly imposed strong—and sometimes irrebuttable—presumptions in favor of approving certain natural gas infrastructure applications. But the panel decision here supplanted Congress's strong statement of the public interest with other goals and vacated FERC's approvals of the LNG facilities at issue here.

---

[1] No person other than *Amici* and their counsel assisted with or made a monetary contribution for preparing or submitting this brief.

The panel opinion is incorrect and will have devastating effects: freezing a distinctly important and job-creating South Texas project years in the making, unsettling long-standing FERC project-approval norms across the country, and weakening America's national security by making it less likely that the United States will continue to supply natural gas to the Nation's friends and allies while increasing our Nation's dependence on non-domestic energy sources.

*Amici* accordingly write separately asking for rehearing either by the panel or *en banc* to correct the panel's error.

The following is the full list of *Amici*:

### United States Senate

Ted Cruz

| | |
|---|---|
| John Barrasso | John Kennedy |
| Bill Cassidy, M.D. | Dan Sullivan |
| John Cornyn | |

### United States House of Representatives

Dan Crenshaw

| | |
|---|---|
| Maj. Leader Steve Scalise | Vicente Gonzalez |
| Brian Babin, D.D.S | Wesley Hunt |
| Michael C. Burgess, M.D. | August Pfluger |
| Henry Cuellar | Randy K. Weber, Sr. |

## SUMMARY OF ARGUMENT

The panel broke from this Court's prior decisions, and it did so on a question of exceptional importance. Congress—not the panel—has the important job of deciding the public interest and codifying it through legislation. As relevant to this case, Congress has decided that building liquified natural gas (LNG) facilities *is* in the public interest. And while Congress established a procedure for federal regulators to consider and explain the environmental effects of building LNG facilities, those procedural requirements do not empower interest groups to place their own desired outcomes above Congress's dictated public interest.

The panel's error is especially egregious because the panel used the flimsiest "environmental" whims to undermine the public interest in building LNG facilities; and the panel chose the wrong remedy—vacatur—to fix the regulators' supposed mistake. Both the decision and its use of vacatur are inconsistent with federal law and this Court's decisions. Together, they amount to a devastating, wrong answer to an exceptionally important question: who gets to decide the public interest? Under our Constitution, Congress gets to decide and codify the public interest. Congress has made pellucidly clear that developing and

approving natural gas projects is a matter of utmost importance to the economic development and national security of the United States.

This Court has previously issued precedent saying the same, but the panel deviated from the Court's decisions. To keep uniformity of the Court's decisions on this question of exceptional importance, the panel should rehear the case or the full Court should review the decision.

**ARGUMENT**

## I.   Congress Codifies the Public Interest.

James Madison explained in Federalist 51 that checks and balances are "essential to the preservation of liberty." Among the checks and balances, the "legislative Powers" to make law and define the public interest are "vested in a Congress of the United States." U.S. Const. art. I, § 1. And the Supreme Court has long recognized that "the lawmaking function belongs to Congress . . . and may not be conveyed to another branch or entity." *Loving v. United States*, 517 U.S. 748, 758 (1996).

While courts have the negative power to disregard an unconstitutional enactment by Congress, they cannot re-write Congress's work. *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 237–38 (2020); *see also Trump v. United States*, 144 S. Ct. 2312, 2380, 219 L. Ed. 2d 991 (2024) (Jackson, J., dissenting) (Congress "is the entity our

4

Constitution tasks with deciding, as a general matter, what conduct is on or off limits"). By vesting "[a]ll legislative Powers" in Congress, the Constitution ensures that elected representatives—not federal judges or petitioners—can codify the public interest. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 609–10 (1952) (Frankfurter, J., concurring) ("When Congress itself has struck the balance, has defined the weight to be given the competing interests, a court of equity is not justified in ignoring that pronouncement . . . .").

## II. Congress Has Made Clear That Building LNG Facilities Is Strongly in the Public Interest.

In the Natural Gas Act (NGA), Congress said that building LNG facilities is strongly in the public interest of the United States. NGA § 3 sets up a "general presumption favoring authorization" of LNG facilities. *Ctr. for Biological Diversity v. FERC*, 67 F.4th 1176, 1188 (D.C. Cir. 2023) (*Alaska LNG*). To that end, Congress dictated that FERC "shall" approve an application to export natural gas "unless, after opportunity for hearing, it finds that the proposed exportation . . . will not be consistent with the public interest." 15 U.S.C. § 717b(a). And for LNG exports to countries with which the United States has a free-trade agreement, the presumption is conclusive—such exports "shall be deemed to be

5

consistent with the public interest" and applications "shall be granted without modification or delay." 15 U.S.C. § 717b(c); *see City of Oberlin, Ohio v. FERC*, 39 F.4th 719, 727 (D.C. Cir. 2022).

Congress imposed these presumptions to "encourage the orderly development of plentiful supplies of electricity and natural gas at reasonable prices." *NAACP v. Fed. Power Comm'n*, 425 U.S. 662, 669–70 (1976). And Congress vested FERC with "exclusive authority to approve or deny an application for the siting, construction, expansion, or operation of an LNG terminal." 15 U.S.C. § 717b(e). The Commission's job is to approve LNG facilities unless they are clearly "not . . . consistent" with the public interest. 15 U.S.C. § 717b(a). It is ***not*** the Court's job to make the public-interest determination for FERC by deciding that environmental whimsy is more important than building LNG facilities.

The regulators at FERC did their job correctly here; the panel, however, incorrectly used the National Environmental Policy Act (NEPA) to reach a different outcome, inconsistent with Congress's directives.

## III.   NEPA Demands Processes, Not Outcomes.

Although Congress promotes building LNG facilities, it also requires federal regulators—here, FERC regulators—to consider and

explain the environmental consequences of building and running the facilities. NEPA imposes this procedural requirement to enable "productive harmony" between economic and environmental goals. 42 U.S.C. § 4331(a); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). NEPA requires agencies simply to consider and explain the environmental impacts of "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). The statute does not give Courts or interest groups a license to elevate their own desires over the public interest. But the panel here took exactly this prohibited step.

## IV. The Panel Mistakenly Put Other Interests over the Public Interest.

In this case, the federal regulators at FERC did what Congress asked them to do: they considered and explained the environmental effects of their decision to fulfill the public interest. Then they approved the construction of these much-needed LNG facilities in South Texas. The panel should have let FERC's decision stand.

Instead, the panel used NEPA to elevate other interests over the public interest dictated by Congress. Most critically, the panel barely mentioned the NGA's presumption in favor of exporting LNG, much less

tried to reconcile that statutory mandate with its use of NEPA to vacate FERC's approval. That mistaken approach has infected the proceedings throughout this case. *See, e.g.*, *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321, 1325–26 (D.C. Cir. 2021) ("[B]efore authorizing the construction and operation of a proposed LNG facility or pipeline, the Commission must conduct an environmental review under NEPA," and only then determine "whether a proposed project comports with the public interest.").

By largely omitting mention of Congress's distinctly strong interest in approving LNG applications, the panel mistakenly allowed its inflated view of NEPA's procedural requirements to take preeminence over core, substantive policy decisions made by Congress.

## V.  Vacatur Was the Wrong Remedy.

Compounding its error, the panel chose the wrong remedy. The panel ***vacated*** the most recent approval of the Rio Grande LNG project. Panel Op. 33–34. This action halts the project while FERC supplements its environmental impact statement. According to the federal

government's own data, those statements take 4.5 years on average.[2]
Such a lengthy pause risks unravelling the whole project, with
devastating effects for South Texas's economy and the Nation's energy
independence.

Moreover, this new precedent threatens existing projects by
opening the door for interest groups to replace congressionally mandated
public interests with their own policy goals. Not only does the panel's
holding set back these properly approved projects by several more years,
but also it threatens their ability to compete in a challenging
international market and chills investment in future projects, with
corresponding risks for the Nation's security and economy.

The panel took this drastic step even though FERC followed this
Court's commands in *Vecinos I* to consider "environmental justice" effects
across a broader area. Panel Op. 7–8, 11. *Vecinos I* did not order the
supplemental environmental impact statement, yet the panel here
concluded FERC ran afoul of NEPA by "not prepar[ing] [this] analysis in
the form of a supplemental environmental statement." Panel Op. 11.

---

[2] CEQ, Environmental Impact Statement Timelines (2010-2018) (June
12, 2022), https://ceq.doe.gov/docs/nepa-
practice/CEQ_EIS_Timeline_Report_2020-6-12.pdf.

In doing so, the panel transformed the test for vacatur, ensuring that project after project will, at the very least, face the risk of vacatur for procedural NEPA issues. Generally, courts determine whether to vacate after assessing: (1) "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)" and (2) "the disruptive consequences of an interim change that may itself be changed." *Allied-Signal v. NRC*, 988 F.2d 146, 150–51 (D.C. Cir. 1993).

Until now, this Court would have concluded that (1) putting "environmental justice" analysis in the supposedly "wrong" form is not a serious problem that jeopardizes the Rio Grande LNG project, and (2) the disruption from vacating a multi-billion-dollar energy project would be significant, and thus, the court would remand without vacatur.

That is what this Court did in *Vecinos I* when it refused to vacate: "[B]oth factors weigh against *vacatur*." *Id.* at 1332. The Court found it reasonably likely that on remand the Commission would reach the same ultimate result while redressing any failure of explanation with regard to its analyses of the projects' impacts on climate change and environmental justice communities, and its determinations of public interest and convenience under Sections 3 and 7 of the NGA. *Id.* The

Court also credited Intervenors' "assertion that vacating the orders would needlessly disrupt completion of the projects." *Id.*

Indeed, this Court has regularly remanded without vacating in NEPA cases. *See*, *e.g.*, *Healthy Gulf v. FERC,* 107 F.4th 1033, 1047–48 (D.C. Cir. 2024); *Oglala Sioux Tribe v. NRC,* 896 F.3d 520, 538 (D.C. Cir. 2018) (Garland, J.); *Citizens Against Burlington, Inc. v. Busey*, 938 F.2d 190, 206–07 (D.C. Cir. 1991) (Thomas, J.).

The panel here embraced a new test, however, reshaping the "seriousness" prong of *Allied-Signal*. If "an agency bypasses a fundamental procedural step," the first prong of the *Allied-Signal* analysis "asks 'not whether the ultimate action could be justified, but whether the agency could, with further explanation, justify its decision to skip that procedural step.'" Panel Op. 33 (quoting *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1052 (D.C. Cir. 2021)). So courts now must focus on whether the agency must undergo a new and significant *procedural* step on remand (a longer NEPA essay), and then vacatur follows even if there is no question that the agency can and will ultimately approve the project again on remand.

Such an intrusive judicial review is inconsistent with NEPA, which

is purely procedural and contains no cause of action. When Congress enacted NEPA, most potential plaintiffs lacked standing anyway. The Supreme Court's recognition of standing to sue based on members' "[a]esthetic and environmental well-being" in *Sierra Club v. Morton* was still a couple of years off. 405 U.S. 727, 734 (1972). Thus, it is not surprising that judicial review of NEPA compliance "was barely discussed" at the time of enactment. David R. Mandelker et al., NEPA Law & Litigation § 2:5 (2d ed. 2024).

Given this backdrop, the opposition's position that remanding without vacatur in a case like this one would subvert NEPA's purpose. Congress likely never envisioned judicial review of NEPA compliance at all, let alone grinding every project with a NEPA defect to a halt, years after approvals were already issued.

No revisionist view of "remand without vacatur" supports the panel's test, either. First, judicial review in this case is under the NGA, not the APA. *See* 15 U.S.C. § 717r(b). So, while some claim the APA's instruction that courts "set aside" unlawful agency action *compels* vacatur in the APA context, *see, e.g.*, *Checkosky v. SEC*, 23 F.3d 452, 490 (D.C. Cir. 1994) (Randolph, J., dissenting), this Court can remand

without vacatur under the NGA's more flexible remedial language, 15 U.S.C. § 717r(b), (d)(3).

Second, even under the APA, "[r]emand without vacatur is essentially a shorthand way of vacating a rule and staying the vacatur pending the agency's completion of an additional required action." *Corner Post v. Bd. of Governors of Fed. Reserv. Sys.*, 144 S. Ct. 2440, 2466 n.6 (2024) (Kavanaugh, J., concurring); *accord* 5 U.S.C. § 706 (requiring courts to consider whether a supposed administrative-procedure error was actually "prejudicial" before setting aside an agency action).

So even if there were any FERC procedural error here, remand without vacatur would make the most sense, because at most the agency need only "provide additional explanation." *Corner Post*, 144 S. Ct. at 2466 n.6 (Kavanaugh, J., concurring).

## VI.    *En Banc* Review Is Warranted.

The panel opinion conflicts with this Court's precedent holding that federal regulators and judges cannot wield NEPA flyspecks to undercut Congress's strong public interest in building LNG facilities. *Alaska LNG*, 67 F.4th at 1180–81. That intra-Circuit disagreement, without more, is sufficient ground for *en banc* review. *See* Fed. R. App. P. 35(a)(1).

The case also presents a "question of exceptional importance." *See* Fed. R. App. P 35(a)(2). Building LNG facilities ***is*** in the public interest, sometimes irrebuttably so. 15 U.S.C. § 717b(a). Congress established this strong regime for LNG production to promote domestic economic growth. Its effects are particularly felt in Texas, Louisiana, and other energy-producing States, given the abundant energy resources in such States and their access to global markets. This regime is intended to reduce America's reliance on imported energy from foreign adversaries and protect the Nation's security, particularly at a time when our allies and partners are seeking trusted and reliable sources of LNG. Respectfully, federal courts cannot overcome such critical, congressionally established public interests by insisting on more paperwork.

## CONCLUSION

The Court should grant panel rehearing or rehearing *en banc*.

October 28, 2024                    Respectfully submitted,

                                    /s/ Ivan L. London
                                    Ivan L. London
                                    MOUNTAIN STATES LEGAL FOUNDATION
                                    2596 South Lewis Way
                                    Lakewood, Colorado 80227
                                    Tele: (303) 292-2021
                                    Fax: (877) 349-7074
                                    ilondon@mslegal.org

                                    R. Trent McCotter
                                    Michael Buschbacher
                                    Andrew W. Smith
                                    BOYDEN GRAY PLLC
                                    800 Connecticut Ave. NW, Suite 900
                                    Washington, DC 20006
                                    (202) 706-5488
                                    tmccotter@boydengray.com

                                    *Counsel for Amici Curiae*

15

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rules 28(a)(1) and 35, *Amici* hereby submit this certificate.

### A.   Parties and Amici

The parties who have appeared before the Court are listed in Petitioners' D.C. Circuit Rule 28(a)(1) certificate.

### B.   Rulings Under Review

Petitioners seek review of two orders of the Federal Energy Regulatory Commission: Rio Grande LNG, LLC, 183 FERC ¶ 61,046 (April 21, 2023), R. 3011, JA1-176; and Rio Grande LNG, LLC, 185 FERC ¶ 61,080 (October 27, 2023), R. 3080, JA177-238.

Intervenors seek rehearing of the panel decision issued by this Court on August 6, 2024.

### C.   Related Cases

The related cases are listed in FERC's D.C. Circuit Rule 28(a)(1) certificate.

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

1.  This document complies with the Fed. R. App. P. 29(a)(4) [the word limit of Fed. R. App. P. (insert Rule citation; e.g., 5(c)(1))] because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) [and (insert applicable Rule citation, if any)]:

    ☒ this document contains 2,600 words, or

    ☐ this brief uses a monospaced typeface and contains [state the number of] lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this document has been prepared in a proportionally spaced typeface using Microsoft 365 in 14-point Century Schoolbook, or

    ☐ this document has been prepared in a monospaced typeface using [state name and version of word-processing program] with [state number of characters per inch and name of type style].

<u>(s) Ivan L. London</u>

Attorney for <u>U.S. SENATOR TED CRUZ, REPRESENTATIVE DAN CRENSHAW, AND BIPARTISAN COALITION OF 13 OTHER MEMBERS OF CONGRESS</u>

Dated: <u>October 28, 2024</u>

## <u>CERTIFICATE OF COUNSEL</u>

I hereby certify, pursuant to District of Columbia Circuit Rule 29(d), that the foregoing brief is filed as a separate brief because of the unique perspective that *Amici Curiae*, as members of Congress, have on the legal and practical significance of the panel's errors.

<u>*/s/ Ivan L. London*</u>
Ivan L. London

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system, which will serve all parties automatically.

*/s/ Ivan L. London*
Ivan L. London